**JUDGE KARAS**

John J. Sullivan (JS 1726)
HOGAN LOVELLS US LLP
875 Third Avenue
New York, NY 10022
Telephone: (212) 918-3000
Facsimile: (212) 918-3100
Email: john.sullivan@hoganlovells.com

**12 CV    3072**

(Additional counsel appear on signature page)

Attorneys for Defendant Hyundai Motor America

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RECEIVED
APR 18 2012
U.S.D.C. S.D.N.Y.
CASHIERS

-------------------------------------------------------------x
KAREN MARSHALL, PAUL FLANNERY, and  :
DARRELL R. WHITE, on behalf of themselves  :
and all others similarly situated,  :
:
Plaintiffs,  :        Case No.: _____
:
v.  :
:
HYUNDAI MOTOR AMERICA,  :
:
Defendant.  :
-------------------------------------------------------------x

## NOTICE OF REMOVAL OF DEFENDANT HYUNDAI MOTOR AMERICA

TO:    CLERK, UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. §§ 1332, 1441, and 1453,

Defendant Hyundai Motor America (hereinafter "Hyundai"), by its undersigned counsel, hereby

invokes this Court's subject-matter jurisdiction and removes the state court action described

1

\\DC - 029016/000009 - 3394105 v4

below from the Supreme Court of the State of New York, County of Westchester to the United States District Court for the Southern District of New York.

1.    This is a civil action over which this Court has original jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), Pub. L. 109-2, 119 Stat. 4 (2005), codified at 28 U.S.C. § 1332(d), and is one which may be removed to this Court pursuant to 28 U.S.C. §§ 1441(a) and 1453(b).

2.    Plaintiffs filed a putative class action Complaint on March 6, 2012 in the action styled *Karen Marshall, Paul Flannery, and Darrell R. White, on behalf of themselves and all others similarly situated v. Hyundai Motor America*, Index No. 53222/2012, in the Supreme Court of New York, County of Westchester (the "Action"). The Complaint names Hyundai as the sole defendant, Compl. ¶ 12 (attached hereto as **Exhibit A**), and alleges that model year 2006 through 2010 Hyundai Sonata vehicles have "a continuing problem with their brake rotors and caliper assemblies." *Id.* ¶ 29.

## DIVERSITY JURISDICTION UNDER CAFA

3.    Enacted to expand federal diversity jurisdiction over purported class actions, CAFA provides that a class action may be removed in accordance with 28 U.S.C. § 1446 if:  (a) membership in the class is not less than 100; (b) any member of the plaintiff class is a citizen of a foreign country or a state different from any defendant; and (c) the aggregate amount in controversy exceeds $5,000,000. *See* 28 U.S.C. §§ 1453(b) and 1332(d).

4.    CAFA's first requirement—that class membership be no less than 100 (28 U.S.C. § 1332(d)(5))—is satisfied here.  This putative class action is brought on behalf of "all citizens of New York who purchased or leased a [2006 to 2010 Hyundai Sonata] in New York State." Compl. ¶ 38.  This class is alleged to include "hundreds or thousands of members." *Id.* ¶ 40.

2

5.    CAFA's second requirement—that any one member of the purported class be a citizen of a state different from any defendant (28 U.S.C. § 1332(d)(2)(A))—is satisfied here. Hyundai is incorporated under the laws of the state of California. The principal place of business of Hyundai is in California. *See* Compl. ¶ 12. Thus, Hyundai is not a citizen of the State of New York, whereas Plaintiffs are citizens of the State of New York. Compl. ¶ 38. The putative plaintiff class is comprised of citizens of the State of New York, and thus minimal diversity exists.

6.    CAFA's third requirement—that the aggregate amount in controversy exceed $5,000,000, exclusive of interest and costs (28 U.S.C. § 1332(d)(2))—is satisfied. Hyundai disputes that it owes any type of damages, and it disputes each and every asserted remedy or theory of recovery advanced in the Complaint. Nevertheless, it is evident that plaintiffs here place more than $5,000,000 at issue.

a.    In CAFA cases, the amount in controversy requirement is satisfied if the removing defendant shows "that it appears to a 'reasonable probability' that the aggregate claims of the plaintiff class are in excess of $5 million." *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 58 (2d Cir. 2006) (quoting *Mehlenbacher v. Akzo Nobel Salt, Inc.*, 216 F.3d 291, 296 (2d Cir. 2000)). "Unlike the general diversity statute which requires at least one claim to meet the amount-in-controversy minimum of $75,000, CAFA explicitly provides for aggregation of each class member's claims in determining whether the amount of controversy is at least $5,000,000." *Id.* at 59 (internal citation omitted).

b.    The Complaint seeks "a declaration that the remedial work necessary to correct the defective brakes is covered by the Basic Warranty," "compensatory damages," "restitution," and "[t]rebling of damages." Compl. Prayer for Relief ¶¶ 2-8.

3

With respect to the declaratory relief claim, "it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. Apple Adver. Comm'n*, 432 U.S. 333, 347 (1976). "In traditional class action suits in federal court under diversity jurisdiction, the object of the litigation has been viewed as 'the monetary value of the benefit that would flow to the plaintiff if injunctive or declaratory relief were granted' . . . ." *Ava Acupuncture P.C. v. State Farm Mut. Auto. Ins. Co.*, 592 F. Supp. 2d 522, 527 (S.D.N.Y. 2008) (quoting *Am. Standard, Inc. v. Oakfabco, Inc.*, 498 F. Supp. 2d 711, 717 (S.D.N.Y. 2007)). Here, that object is the right of the individual Sonata owners to obtain a repair of the alleged brake defect free of charge under Hyundai's warranty.

        c.     Thus, at a minimum, plaintiffs have placed the repair cost of all New York-based Hyundai Sonata vehicles at issue by seeking compensatory damages for those Sonata vehicles that have manifested the alleged defect and declaratory relief for those that have not. *See* Compl. Prayer for Relief ¶¶ 2-3. The Complaint alleges that "[t]he vehicle repairs involved herein cost approximately $350-$450 dollars per repair." Compl. ¶ 13; *see also id.* ¶ 16 ("The cost of the brake repair and/or replacement is approximately $350-$450."). There were 45,214 model year 2006 through 2010 Hyundai Sonata vehicles sold or leased as new vehicles to buyers or lessees in the State of New York. Exhibit B, Johnson Decl. ¶ 4. At a cost of $350 per repair, repairing these 45,214 vehicles would cost $15,824,900. As such, plaintiffs have placed at issue an amount well above CAFA's amount-in-controversy threshold. The additional relief plaintiffs seek— treble damages, restitution, and punitive damages—only reinforces the conclusion that the amount-in-controversy requirement of CAFA is met here. *See, e.g., Colavito v. N.Y.*

*Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006) (satisfying amount-in-controversy requirement with punitive damages).

        d.     Although plaintiffs allege that they "do not intend to seek damages and counsel fees in excess of five million ($5,000,000) for the Class," Compl. ¶ 13, "a motion made by a plaintiff to increase the amount of relief requested in the *ad damnum* clause of the complaint . . . may be granted in the absence of prejudice to the defendant." *Loomis v. Civetta Corinno Constr. Corp.*, 429 N.E.2d 90, 90 (N.Y. 1981). "Thus, the prayer [for relief] cannot be counted upon to limit the amount of damages that may be awarded under New York law," and "a removing defendant should not be bound by the plaintiff's demand for relief." *Cheung v. Union Central Life Ins. Co.*, 269 F. Supp. 2d 321, 324-25 (S.D.N.Y. 2003).

        e.     In sum, there is a reasonable probability that the aggregate claims of the plaintiff class, exclusive of interest and costs, are in excess of the $5 million jurisdictional threshold set by 28 U.S.C. § 1332(d)(2).

## PROCEDURAL REQUIREMENTS UNDER REMOVAL STATUTE

        7.     The procedural requirements set forth in 28 U.S.C. § 1446 are also satisfied here. Section (a) of that statute requires the removing party to file a notice of removal "in the district court of the United States for the district and division within which such action is pending," which Hyundai does with this filing. Section (a) also requires a moving party to provide a copy to the district court of all process, pleadings, and orders served on defendants in the state action. Accordingly, Hyundai has attached copies of all pleadings, process, and orders served on Hyundai in this action, including the Complaint and summons. *See* Exhibit A.

8.      This Notice of Removal is timely under 28 U.S.C. § 1446(b). That section provides that "[t]he notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant . . . of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . ." The Complaint was served on the Secretary of State for the State of New York on March 8, 2012. On March 21, 2012, the registered agent for Hyundai, National Registered Agents, Inc., received a copy of the Complaint via certified mail.

9.      In this District, "[w]hen service of process is made upon a statutory agent rather than on the defendant personally, the thirty-day period during which the defendant may remove the case does not begin with service upon the agent, but rather, when the defendant receives personal service of the summons and complaint." *Fernandez v. Hale Trailer Brake & Wheel*, 332 F. Supp. 2d 621, 624 (S.D.N.Y. 2004); *see also* 14C Charles Alan Wright, et al., *Federal Practice and Procedure* § 3731 (4th ed. 2011) ("[I]t now appears to be settled law that the time for removal begins to run only when the defendant or someone who is the defendant's agent-in-fact receives the notice via service . . . .").

10.     The date of this Notice of Removal, April 18, 2012, is within thirty days of receipt of the Complaint by Hyundai's registered agent. Accordingly, this Notice of Removal is timely under 28 U.S.C. § 1446(b).

11.     Pursuant to 28 U.S.C. § 1446(d), copies of this Notice of Removal are being served upon counsel for Plaintiffs and filed with the Clerk of the Supreme Court of the State of New York, County of Westchester.

12.     Based upon the foregoing, Hyundai respectfully submits: (i) that this Court has diversity jurisdiction under 28 U.S.C. §§ 1332, 1441, 1446, and 1453; and (ii) that the procedural

requirements of 28 U.S.C. § 1446 are met. As such, this action is properly removable to federal court.

WHEREFORE, the above described action now pending against Hyundai in the Supreme Court of New York, County of Westchester is removed to the United States District Court for the Southern District of New York.

Dated:  April 18, 2012

Respectfully Submitted,

HOGAN LOVELLS US LLP

By: _John Sullivan_

John J. Sullivan (JS-1726)
875 Third Avenue
New York, New York 10022
Tel:     (212) 918-3000
Fax:     (212) 918-3100
john.sullivan@hoganlovells.com


Michael L. Kidney*
Audrey E. Moog
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, DC 20004
Tel:     (202) 637-5600
Fax:     (202) 637-5910
michael.kidney@hoganlovells.com
audrey.moog@hoganlovells.com
(* - *pro hac vice papers to be filed*)

*Attorneys for Defendant Hyundai Motor America*

ADC - 029018/000009  3394105 v4

# EXHIBIT A

State of New York - Department of State
Division of Corporations

Party Served:                                        Plaintiff/Petitioner:
HYUNDAI MOTOR AMERICA                                    MARSHALL, KAREN


C/O NATIONAL REGISTERED AGENTS, INC.
SUITE 140
1660 WALT WHITMAN ROAD
MELVILLE,  NY 11747


Dear Sir/Madam:
Enclosed herewith is a legal document which was served upon the Secretary of
State on 03/08/2012 pursuant to SECTION 306 OF THE BUSINESS CORPORATION LAW.
 This copy is being transmitted pursuant to such statute to the address
provided for such purpose.


                                                    Very truly yours,
                                                Division of Corporations

INDEX NO. Index No. 53222/12

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

KAREN MARSHALL, PAUL FLANNERY
and DARRELL R. WHITE, on behalf of
themselves and all others similarly
situated,

                   Plaintiffs,

        -against-

HYUNDAI MOTOR AMERICA,

                 Defendant.

## SUMMONS & COMPLAINT

**K**antrowitz,
**G**oldhamer &
**G**raifman P.C.
*Attorneys at Law*

*Attorneys for*
    Plaintiffs

747 CHESTNUT RIDGE ROAD, SUITE 200
CHESTNUT RIDGE, NY 10977-6216
(845) 356-2570

FILED: WESTCHESTER COUNTY CLERK 03/06/2012

NYSCEF DOC. NO. 1

INDEX NO. 53222/2012

RECEIVED NYSCEF: 03/06/2012

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

KAREN MARSHALL, PAUL FLANNERY
and DARRELL R. WHITE, on behalf of
themselves and all others similarly situated,

Plaintiffs designates
Westchester County as
place of trial

                                    Plaintiffs,

The basis of the venue is
Plaintiff Karen Marshall's
residence, 15 South
Beechwood Rd., Bedford
Hills, NY 10507

        -against-

HYUNDAI MOTOR AMERICA,

                                    Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X          ***SUMMONS***

To the above named Defendant:

        **YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to
serve a copy of your answer, or, if the complaint is not served with this summons, to serve
a notice of appearance, on the Plaintiff's Attorney(s) within 20 days after the service of this
summons, exclusive of the day of service (or within 30 days after the service is complete
if this summons is not personally delivered to you within the State of New York); and in
case of your failure to appear or answer, judgment will be taken against you by default for
the relief demanded in the complaint.

Dated:          Chestnut Ridge, New York
                March 6, 2012

                                    Gary S. Graifman, Esq.
                                    **KANTROWITZ, GOLDHAMER
                                    & GRAIFMAN, P.C.**
                                    747 Chestnut Ridge Road
                                    Chestnut Ridge, New York 10977
                                    Tel: (845) 356-2570

Defendant's Address:

Hyundai Motor America
c/o National Registered Agents, Inc.
1666 Walt Whitman Road, Suite 140
Melville, NY 11747

FILED: WESTCHESTER COUNTY CLERK 03/06/2012
NYSCEF DOC. NO. 2

INDEX NO. 53222/2012
RECEIVED NYSCEF: 03/06/2012

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
-----------------------------------------------------x
KAREN MARSHALL, PAUL FLANNERY
and DARRELL R. WHITE, on behalf of
themselves and all others similarly situated,

                Plaintiffs,                Index No.  53222/12

- against -

HYUNDAI MOTOR AMERICA,           **CLASS ACTION**
                                     **COMPLAINT**

              Defendant.           **JURY TRIAL DEMANDED**
-----------------------------------------------------x

      Plaintiffs, Karen Marshall, Paul Flannery and Darrell R. White ("Plaintiffs"), on behalf of

themselves and all others similarly situated, by their undersigned counsel, allege, against

Defendant Hyundai Motor America ("Hyundai" or "Defendant"), the following upon personal

knowledge as to their own acts, and upon information and belief, based on the investigation

conducted by their counsel, as to all other allegations:

## SUMMARY OF THE ACTION

      1.     Plaintiffs bring this class action complaint on behalf of themselves and all other

citizens of the State of New York who purchased and/or leased (collectively "purchasers") a

Hyundai Sonata ("Sonata"), model years 2006 through 2010 ("Class Vehicles"), and which

vehicles had or currently have a defective rotor/caliper brake assembly (the "Class").

      2.     As alleged herein in greater detail, Sonatas are equipped with defective brakes.

Due to these defective parts, Sonatas manifest significant squealing and premature deterioration

of the rotors and pads and sticking of calipers when the brake pedal is applied if the defect is not

corrected by replacement of brake pads, rotors and calipers. These defects are unreasonably

dangerous, as they can cause the braking system components to become severely worn and damaged, and may lead to a complete failure of the braking system.

3.      By pre-release data and testing, analysis of service and maintenance reports and trends, knowledge of the material and design specifications, and by complaints of its customers, Hyundai was on notice that the Sonata vehicles' brake assemblies were defective and not fit for their intended purpose of properly and effectively bringing the automobile to a stop. Hyundai actively concealed the existence and nature of said defects from Plaintiffs and the Class members at the time of purchase and thereafter. Hyundai has not recalled the Sonata to repair the defects, nor has it offered to repair the defects to its customers free of charge, nor has it offered to reimburse Hyundai owners, present or past, who incurred costs relating to braking system repairs.

**The Warranty Provisions**

4.      Pursuant to the new vehicle "bumper to bumper" express warranty given to all purchasers of the Sonata, Hyundai is responsible for all repair and labor associated with the repair and service of defective parts. That warranty (referred to herein as the "Basic Warranty") was effectively for 60,000 miles or 60 months, whichever came first. Although the Basic Warranty purports to exclude brake pads, the brake components involved herein, brake rotors and calipers, are not excluded items under the Basic Warranty. Moreover, brake rotors and calipers are clearly not "wear and tear items" which one would expect to be excluded. For example, the Basic Warranty for the 2008 Sonata, which, upon information and belief is typical of the basic Warranty for the Class Vehicles herein, states in pertinent part:

**WARRANTOR**
Hyundai Motor America (HMA) warrants your new 2008 . . .
Hyundai vehicle pursuant to the limited warranties described in
this Owner's Handbook.

      \*                   \*                 \*

**WHAT IS COVERED**
Repair or replacement of any component originally manufactured or installed by
Hyundai Motor Company, Hyundai Motor Group, Hyundai Motor manufacturing
Alabama (HMMA) or Hyundai Motor America (HMA) that is found to be
defective on material or workmanship under normal use and maintenance, except
any item specifically referred to in the section "What is Not Covered." . . .

**WARRANTY PERIOD**
The warranty period is limited to 5 years from the date of original
retail delivery or date of first use, or 60,000 miles, whichever
occurs first.

      \*                   \*                 \*

**WHAT IS NOT COVERED**
Normal maintenance items (#) are warranted in normal service,
only when the replacement is the result of a defect in material or
factory workmanship, for 12 months from the date of original retail
delivery of date of first use, or 12,000 miles, whichever occurs
first, or up to the first scheduled maintenance replacement interval.
(#- such as belts, brake pads and linings, clutch linings, filters,
wiper blades and all bulbs except halogen bulbs which are covered
up to 3 years from the date of original retail delivery or date of first
use, or 36,000 miles, whichever occurs first.)

5.     While the Basic Warranty covers the braking system (except for brake pads and

linings as noted above) for 60 months or 60,000 miles, Hyundai has claimed that the defect's

symptoms are caused by normal wear and tear, thereby facially avoiding any obligation to

remedy this problem. Further, if the defect has occurred after the warranty expires, Hyundai has

also claimed that the warranty on the entire braking system is inapplicable. Consequently,

3

Plaintiffs and the Class members have been required to pay for the repairs of the brake assemblies themselves.

6.    Plaintiffs allege that Hyundai is responsible and liable for the costs of replacing the defective brake assemblies including reimbursement to them and members of the class for needed repairs already performed.

## PARTIES

7.    Plaintiffs, Paul Flannery, Karen Marshall, and Darrell R. White bring this action in an individual capacity and on behalf of all others similarly situated.

8.    Plaintiff Paul Flannery at all relevant times is and was a resident of the Village of Clayton, County of Jefferson, State of New York.   In or about November 2007, Plaintiff Flannery purchased a 2008 Sonata from an Hyundai dealership, located in Watertown, New York.

9.    Plaintiff Karen Marshall at all relevant times is and was a resident of the Village of Bedford Hills, County of Westchester, State of New York.   In or about November 2005, Plaintiff Marshall purchased a 2006 Sonata from a Hyundai dealership in Bedford Hills, New York.

10.    Plaintiff Darrell White at all relevant times is and was a resident of the Village of Mattydale, County of Onondaga, State of New York.   In or about October 2007 , Plaintiff White purchased a 2007 Sonata from a Hyundai dealership in Syracuse, New York.

11.    At the time of their respective purchases, each of the plaintiffs was a citizen of the State of New York.  Upon purchase, each of the vehicles were registered and insured in the State of New York.  Plaintiffs intended to use and did use their respective vehicle in New York.

12.    Defendant Hyundai is a foreign corporation, with its principal place of business and national headquarters located in California. However, Defendant Hyundai is registered to do business in New York as a foreign corporation and has designated the New York Secretary of State as its agent for service of process in New York which, in turn, is authorized to serve Hyundai's registered agent in New York, which is National Registered Agents, Inc., Suite 140, 1666 Walt Whitman Road, Melville, New York 11747. Defendant designs, manufactures and sells automobiles and other vehicles under its Hyundai brand name throughout the United States, including in the State of New York. In addition, Defendant's Sonata models are advertised, distributed and sold at multiple places of business in the State of New York through Defendant's dealers, located at: Mt. Kisco and Bedford Hills, New York, and Watertown, New York, among other places. These locations were, and are maintained by, Defendant's dealers for the sale of Defendant's vehicles, including the Sonata and the Defendant has sold the model years in question in the State of New York to Plaintiffs and members of the Class during the Class Period.

## JURISDICTION AND VENUE

13.    The vehicle repairs involved herein cost approximately $350-$450 dollars per repair Plaintiffs believe that the cost of repair for the class vehicles is not greater than and is, in fact, less than five million dollars ($5,000,000) and Plaintiffs do not intend to seek damages and counsel fees in excess of five million ($5,000,000) for the Class. Accordingly, this court may exercise jurisdiction over the Defendant in this class action which involves New York State citizens and violation of New York State statutes for the purchases by class members of their vehicles in New York State.

5

14.     The action has been brought in this jurisdiction because it has a distinct nexus with class members and the alleged harm.  In addition, the number of citizens of the State in this forum is substantially larger than citizens from other states, particularly as the Class is defined as purchasers and/or lessees who are New York citizens.  In addition, Hyundai is registered to do business in New York as a foreign corporation.

15.     The case is properly brought in this County as at least one Plaintiff resides in the County and  Defendant has sold defective vehicles in the County, maintains sales and service authorized dealers in the County and advertises its vehicles for sale in the County.

## UNCONSCIONABILITY AND
## UNENFORCEABILITY OF ANY ARBITRATION CLAUSE

16.     To the extent Defendant has made individual arbitration a requirement to enforce the warranty, such requirement is unconscionable as Plaintiffs and the class cannot vindicate their rights in arbitration.  In particular, the arbitration agreement requires that Plaintiffs pay $275 for the arbitration filing fees, in addition to any individual expenses they may incur (e.g., travel, time off from work or responsibilities, attorneys fees).  The cost of the brake repair and/or replacement is approximately $350-$450.  As a result, Plaintiffs and members of the class could not expect to vindicate their rights or seek a remedy in individual arbitration given the costs involved and the prospects of individual recovery.

## FACTUAL BACKGROUND AND SUBSTANTIVE ALLEGATIONS

### Plaintiff Flannery's Factual Allegations

17.     Plaintiff Flannery purchased a new 2008 Sonata vehicle from a Hyundai dealership located in Watertown, New York in or about November 2007, while a citizen of the

6

State of New York. The vehicle was delivered to Plaintiff and/or put in service on or about the end of 2007.

18.     At the time of purchase, Hyundai, through its dealership, employees, agents and servants represented to Plaintiff that it thoroughly inspected the vehicle, including its braking system, and that the entire vehicle was in good condition and fit for its intended purpose. In fact, Defendant represented to Plaintiff and the Class members that such inspection was key to the efficient operation of the vehicle.   Defendant further represented to Plaintiffs and members of the Class that their vehicles provided a high level of performance and affordable price, and that Hyundai operated the world's largest integrated automobile manufacturing facility which included complete state-of-the art testing facilities.   The Sonata was redesigned prior to the release of the 2006 Model.  Hyundai represented that the redesigned Sonata had a sophisticated design and included "segment-leading standard safety features" which, by direct reference and by implication, the braking system would be a significant part.

19.     When the Plaintiff's vehicle had approximately 22,205 miles, Plaintiff became aware of problems with the brakes as a result of loud noise and vibration from the rear of the vehicle.

20.     Plaintiff brought the vehicle to a local mechanic who determined that the brakes and rotors required replacement.  Plaintiff contacted Defendant through its dealer and requested that Defendant cover the repair or replacement under 5 Year/60k Warranty as the vehicle was still within the 5 year 60,000 miles warranty, which request Defendant refused.

21.     As a result, Plaintiff had the brake pads and rotors replaced at his expense and paid $317.85.

7

**Plaintiff Marshall's Factual Allegations**

22.    Plaintiff Marshall purchased a new 2006 Sonata in or about November 2005 from Healy Brothers Hyundai in Mt. Kisco/Bedfords Hills, New York.

23.    When the vehicle had approximately 11,297 miles on it, the problem with brakes and rotors first occurred.  At that time, Plaintiff brought the vehicle into the dealer and the dealer replaced the brakes under warranty.  However, in or about April 2008, the problem with the brakes occurred again at approximately 42,782 miles. At that time, Plaintiff experienced vehicle vibration when the brakes were applied.   Plaintiff brought the vehicle into Falcon Hyundai which indicated excessive wear on the pads and rotors.   Plaintiff requested that Defendant cover the replacement under the 6 Year/60k Warranty which Defendant refused.  As a result, the pads and rotors were replaced at Plaintiff's expense and Plaintiff paid $429.45 for parts and labor which Defendant wrongfully refused to cover.

24.    Again in or about June 2010, Plaintiff experienced vibration when applying the brakes and had the brakes looked at by a local repair shop.  Again, the pads and rotors required replacement.  Again, Plaintiff requested that Defendant cover the cost under warranty and Defendant refused.  Plaintiff had the repair work done and paid $388.38.

25.    Within less than 10,000 miles or in and about September 2010, Plaintiff noticed the same noises occurring and the same vibration when brakes were applied.  Totally frustrated and no longer able to do continuous repairs to the same areas on the car, Plaintiff cut back or cut out altogether long trips in the car such as weekend getaways or trips to Florida to see parents. In sum, Plaintiff spent thousands on an item that should be a fraction of that and was concerned about the safety of the car since brakes are a critical component.

**Plaintiff White's Factual Allegations**

26.     Plaintiff White purchased his 2007 Sonata vehicle new from an authorized Hyundai dealer in Syracuse New York in October 2007. In or about June 2007, Plaintiff heard a loud grinding noise when applying the brakes and brought the vehicle to the dealer. The mechanic at the dealership conceded "this happens all the time" and told him he would just have to keep bringing it back to the dealer every year for "brake maintenance." At the time Plaintiff brought the vehicle in for the brake repair, the mileage was approximately 26,739 miles. Defendants refused to cover the brake repairs, including work to or replacement of the rotors.

27.     As a result, Plaintiff paid approximately $310 for the brake repair/replacement, inclusive of the rotors.

28.     Again, in September 2011, the brakes and rotors were performing in a defective fashion and required replacement. Plaintiff brought the vehicle into a mechanic to examine the problem. Again, the problem was premature disintegration of the pads and rotors. Plaintiff had the brakes and rotors replaced at a cost of approximately $473.43. At the time the vehicle's mileage was 75,200 but it was covered under an extended warranty offered by Hyundai or, alternatively, by the fact that Hyundai's Basic Warranty was unconscionable as applied to the rotors and calipers.

**Defendant Hyundai's Conduct**

29.     Plaintiffs subsequently learned that their Sonatas, just like the other Class Vehicles, model years 2006 through 2010, had a continuing problem with their brake rotors and caliper assemblies. Plaintiffs allege that the problem with the 2006 vehicles' brakes first surfaced in 2005, when it became apparent that there was a design and manufacturing defect in the rotors and caliper assemblies.

9

30.    Hyundai, nevertheless, continued to represent to new purchasers and/or lessees of Sonatas, as it did with Plaintiffs, that said Sonata's including their brake assemblies, were properly designed, in good working condition, and fit for their intended purpose.

31.    Hyundai, through its dealerships, agents, servants and employees, were put on actual and/or constructive notice of the defective brakes in the Class Vehicles since at least 2005. Thus, when Plaintiffs subsequently purchased their Sonatas, Hyundai knew, or should have known, that the brake assemblies on these vehicles were defective.  Hyundai, nevertheless, failed to disclose the existence and nature of said defects in any advertisements, agreements, publications, websites, owner manuals, warranty agreements or literature given to new purchasers of the vehicle, including Plaintiffs and members of the Class.  Hyundai also failed to provide owners of the vehicle with any written warnings or notices regarding the vehicle's defective brakes.  Further, Hyundai refused to cover the cost of replacing these defective brakes claiming that such costs were not covered by the Basic Warranty.

32.    Further, even though Hyundai had actual knowledge of the defect in the brake assemblies in the Class Vehicles, it did not correct the defect and concealed the existence of the defect in the Class Vehicles.

33.    While rotors may occasionally need to be turned to restore their braking service, the rotors and calipers do not normally wear out and require complete replacement during the normal life of the vehicle used under 100,000 miles.  In fact, while Hyundai's Service and Maintenance Guide call for the periodic inspection of the braking system, it does not suggest or require the scheduled replacement of any rotors or calipers in the braking system within the first 120,000 miles.

10

34.    Upon information and belief, at least one of the defects existing within the rotors and calipers in the 2006 Sonatas, is that the rotors are too thin and/or varying in thickness and not in conformance with customary thickness and uniformity which would otherwise be standard in the industry.  In addition, the caliper contains a pin and/or guide which has a tendency to stick because it fails, *inter alia*, as it was not galvanized and/or treated to be anti-corrosive, contrary to what proper workmanship and design would have required.

35.    Upon information and belief, as early as 2005, Hyundai was, in fact, aware of the defect and the inherent and dangerous driving problem the defect created.  Defendant had the benefit of its pre-release testing, early service maintenance analysis and reports and data; knowledge and examination of the specifications for the various brake part (e.g., rotors, hubs and caliper assemblies);  knowledge of materials; and knowledge through customer complaints to Hyundai directly and through online consumer websites.   Upon information and belief, and for purely economic motives, the Defendant chose to continue to produce Sonata vehicles with defective rotors and caliper assemblies since it was less expensive to do so.

36.    Various complaints filed by purchasers of the Sonata vehicles with various internet bulletin board-type websites demonstrate the potential dangerous nature of the defective condition.  Defendant was aware of and had knowledge of these complaints and, therefore knew that the problem was a widespread and common defect and not the result of mere isolated incidents unrelated to the defect.

(a)    For example, On June 9, 2006, one consumer [Case No. 10159377] noted on www.mycarstats.com that "The brakes on my 'new' Hyundai Sonata is the problem.  The car will stop but with my foot on the brake pedal—the pedal will go to the floor.  Took the car to the

11

agency [sic] 5/13/06 and was told that was 'normal' for this car!!! Duh!!! Bought the car 5/02/06 Have less than 1000 miles on it now. NM"

      (b)    On April 21, 2008, another consumer noted on www.mycarstats.com, after noting that he had to replace the brake assemblies at 40,000 miles and again at 72,000, that "[A] particular mechanic, at a well known facility informed me that Hyundais are notorious for wearing out brakes and they see this continued problem. They also informed me that the Hyundai dealer is quite aware of this issue."

      (c)    On January 16, 2009, a consumer noted on www.mycarstats.com "I have 2007 Hyundai Sonata with 21,000 miles. Brake pads were sticking causing hazardous driving and braking. The same problem occurred 3 times within 46,000 miles on my previous 2003 Hyundai Accent. I believe the brakes are improperly engineered with metals which corrode prematurely in salt/snow."

      (d)    On March 1, 2009, a consumer noted on www.mycarstats.com "22,000 miles on my Hyundai Sonata and the left rear wheel brake caliper stuck. The stuck caliper left the pad against the rotor. Both the left rear wheel rotor and both rear brake pads had to be replaced. The Hyundai dealership would not cover the repair under warranty and I had to pay almost $400 dollars to get it fixed. I have never had a car with only 22,000 miles have a brake problem like this."

      (e)    On May 3, 2009, a consumer noted on www.mycarstats.com that his Sonata required a major brake repair and stated "[k]nowing the heat was from the pads not releasing, I refused the work and investigated myself. Like other complaints here, I found that the pads are too tight in the calipers, and also are corroded. The heat issue only makes them fit tighter. The pad guides needed to be lightly filed and coated with anti-seize to fit and slide properly. I

12

googled this and scanned the Hyundai forums, and the internet is littered with Sonatas and other Hyundais with the exact same problem. Hyundai will not address the issue, preferring to charge customers for new brakes and regular brake "Lube" service. Hyundai consumer affairs also did absolutely nothing about this. This is a safety issue and a design flaw. Sooner or later this problem will cause an overheated wheel/tire to fail, or a wheel to lock up under slippery boards, and someone will be out more than just repair money."

(f)    On June 12, 2009, a consumer noted on www.mycarstats.com that his "Rear brakes ceased [sic] (left side) which causes pad to wear out and need replacement at 22,000 miles!! Not covered under warranty....charged me $173.95 + tax to repair."

(g)    On July 13, 2009, a consumer noted on www.mycarstats.com that he "[p]urchased Hyundai Sonata recently and heard high pitched chirp/squeal sound in rear area of car. Searched internet to see if similar problems were identified. Learned that hundreds of people are experiencing similar issues with premature brake wear due to defective rear brake mechanisms. Brakes appear to be malfunctioning under normal road conditions and freezing brake pads against rotors. Rotors wear out from premature wear. This is a serious safety issue. Hyundai unresponsive to customer complaints indicating road salt to blame. This is costing hundreds of Americans hundreds of dollars in tough economic times not to mention the safety concerns of potentially failing brakes causing accidents. Investigation and action is needed to determine the cause of the defect and initiate a formal recall from Hyundai."

(h)    On July 23, 2009, a consumer noted on www.mycarstats.com that "Rear brakes on 2007 Hyundai Sonata acquired high pitched squeal, odor, and wheels were hot to touch at 19,800 miles. Dealer replaced brakes pads and resurfaced rotor. Seems to be premature wear of rear brake pads and rotors due to defective rear brake mechanisms causing the pads to freeze

13

against the rotors. Dealer maintains the brakes need "adjusting" every 10,000 miles to avoid the problem."

(i)      On July 11, 2009, a consumer noted on www.edmunds.com "I own a Sonata that is now on its second set of rear brake pads at 32,000 miles. Having owned cars with mixed city and highway driving now for 35 years, I don't recall having replaced brakes much ever before 60,000 miles much less than rear brakes on a front wheel drive twice in 30,000 miles, it is just shocking. There seems to be wide spread [sic] agreement that this should not be happening but not much [recourse]."

(j)      On July 20, 2009, a consumer noted on www.edmunds.com "My 2007 Sonata had 26K miles, and I just paid the Hyundai dealer to replace the rear pads and re-surface the rotors. The service manager explained how he believed the rear brakes wore out so soon: Corrosion on the caliper guide prevented the caliper from returning to a 'rest' position once the brake pedal had been released. As a result, the calipers were applied continuously, resulting in premature wear of the caliper pads. Hyundai subsequently denied my request to cover this repair under their warranty. I am by no means an expert when it comes to cars, but after seeing several similar stories on this discussion page, it seems to me the premature wear of rear brake pads is a SYMPTOM of the real problem: the caliper guides are susceptible to rust. If that is indeed the case, we are talking about a VEHICLE DESIGN FLAW affecting a rather important component."

(k)      On December 12, 2009, a consumer noted on www.aboutautomobile.com "Defect in design or substandard metal parts in the rear brake assemblies of 2006 & later hyundai sonatas causing premature brake wear. I have premature brake pad wear (metal on metal) after 35,000 miles on my 2007 sonata. This condition is reported online by many other owners with as little

14

as 20K. Dealer will not cover under Warranty. Hyundai usa will only consider reimbursement after it is repaired first and preferable by a dealer. My dealer said its a "design flaw with the pad retainer", those online report corroded caliper mounting pins as the cause. Some report they need to routinely clean and lubricate these parts to prevent the excessive wear. Because this is a brake issue, safety of all owners should be enough to issue a recall."

(l)　　On March 22, 2010, a consumer noted on www.aboutautomobile.com "My 2007 sonata [sic] had only 18,000 miles on it when the rear brakes kept squeaking & locking up. This wore the pads down and they had to be replaced. I was told this happened because the sliders were rustin [sic] up and stopped working."

(m)　　On August 13, 2010, a consumer on www.aboutautomobile.com noted "Intermittent rear brake noise on 2007 hyundai sonata for over 1 year. Twice inspected at dealers shop, no problem found and all disc brake pads within specs. I noted recently at 42,000 miles that the passenger side steel rear wheel was getting extremely hot due to rear brakes overheating. My dealer stated that pass. Side rear brake pad had worn down almost completely due to 'brake pad slides sticking on calipers.' New set for rear brakes were installed at cost of 240.00. My dealer and hyundai corporation stated that repair work would not be covered under Warranty! I feel this is a safety issue not only because of rear brake pad premature failure but the unknown effect on the rear wheel bearings due to overheating of brakes/wheel."

37.　　That the 2006 – 2010 Sonata vehicles were experiencing significant problems with calipers, rotors and brakes was known to Defendant. Accordingly, the premature wearing, grinding and/or premature failure of the brakes is caused by a product defect. It was also known to the Defendant that this defect caused a potentially dangerous driving condition if not corrected when experienced by the vehicle owner.

15

## CLASS ACTION ALLEGATIONS

38.    Plaintiffs bring this action on their own behalf and on behalf of all other persons similarly situated, pursuant to the New York Civil Procedure Laws & Rules ("CPLR") Article 9, Section 901, et seq., on behalf of a class, consisting of all citizens of New York who purchased or leased a Class Vehicle in New York State.   Excluded from the class are Defendants, officers and directors of the company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.   Plaintiffs assert that the Class may be divided into two subclasses. The first consists of all Class members who have experienced some or all of the aforementioned defect and have expended sums to repair the defect when, in fact, Defendant is legally responsible to pay for the same (the "Damages Subclass").   The second seeks declaratory relief, and consists of Class members who will have or may have the defective rotor problem manifest in the future for which Defendant, though legally responsible, will not cover or pay for (the "Declaratory Relief Subclass").   Some Class members may overlap the subclasses, since they have paid for a replacement, and thereby suffered damages, but to the extent they may experience the defect and require additional rotor/caliper assembly replacement beyond that for which they paid, they are entitled to declaratory relief.   Except where otherwise stated, the term "Class" includes both subclasses.

39.    The Class which Plaintiffs seeks to represent is defined as:

> All persons who are or were at the time of purchase or lease, a citizen of
> the State of New York purchased and/or leased a 2006 to 2010 Sonata
> automobile. The term "persons" includes individuals as well as profit and
> not-for-profit corporations, partnerships, limited liability companies,
> limited liability partnerships, joint ventures, sole proprietorships,
> associations, firm, trust and other business and governmental entities.
> Excluded from this Class are any persons or other entity related to or

16

affiliated with Defendants; any person, firm, trust, corporation, or other entity who purchased, for resale, from Defendants, or any entity related to or affiliated with Hyundai, a new Sonata model year 2006 to 2010, or any person who has an action for damages for personal injury or death or property damage against Defendant.

## NUMEROSITY

40.    The members of the Class are so numerous that joinder of all members is impracticable. The Class is made up of hundreds or thousands of members. The precise number of Class members can only be ascertained through discovery, which includes Defendant's sales, service, maintenance and complaint records. The disposition of their claims through a class action will benefit both the parties and this Court.

## COMMON QUESTIONS OF LAW AND FACT

41.    There is a well-defined community of interest in the questions of law and fact involved affecting the Plaintiffs and members of the Class.

42.    The questions of law and fact common to the Class, and in particular, the Damages Subclass, predominate over questions which may affect individual members, and include the following:

(a)    Whether the rotors and calipers used by Defendant in its Class Vehicles, model years 2006-2010 were defective in that the caliper pin and/or guide was defective, and/or rotors were too thin and/or contained such excessive variation in thickness as to fail to conform to industry standards or contained other substantial defect.

(b)    Whether Sonata vehicles possess the brake system defect or defects alleged;

(c)    Whether the brake system defect(s) constitute a breach of the implied warranty of merchantability and of express warranty;

(d)    Whether the calipers and/or rotors are included in the 60,000 mile/60 month express warranty (e.g., Basic Warranty)?

17

(e)     Whether the Defendant violated New York's General Business Law § 349;

(f)     Whether members of the Class are entitled to be notified and warned about the brake system defect and are entitled to the entry of final and injunctive relief compelling Defendant to issue a notification and warning to all class members concerning such a defect;

(g)     Whether Class members are entitled to actual damages and if so, the appropriate amount thereof;

(h)     Whether Defendant deliberately misrepresented or failed to disclose or concealed material facts to Plaintiffs and the Class members;

(i)     Whether Defendant gave an express warranty which was limited by time despite Defendant's knowledge that the braking defect would become apparent after the warranty period; and

(j)     Whether the durational limits of the Basic Warranty as applied to this significant defect are unconscionable and therefore unenforceable.

## TYPICALITY

43.     The claims and defenses of Plaintiffs, as the representative Plaintiffs, are typical of the claims and defenses of the class because Plaintiffs and the Class members all owned Class Vehicles with defective brake assemblies which were designed, manufactured and sold by Defendant. Plaintiffs, like all class members, purchased their Sonata without having received any warning or notification from the Defendant of the brake defect. Plaintiffs also qualify as typical of each subclass.

## ADEQUACY OF REPRESENTATION

44.     Plaintiffs, as the representative Plaintiffs, will fairly and adequately assert and protect the interests of the Class as:

(a)     Plaintiffs have hired attorneys who are experienced in prosecuting class action claims and will adequately represent the interests of the Class; and

18

(b)    Plaintiffs have no conflict of interest that will interfere with the

maintenance of this class action.

## PREDOMINANCE

45.    With respect to the Damages Subclass and/or Class, questions common to the

class predominate over those which only affect individual owners.  This case involves one model

car.  The braking system parts are interchangeable from one model year to the next.  The brakes

are defective regardless of who was driving them or how they were being driven.  Liability will

primarily be predicated upon the jury's evaluation of the design of the brake assembles, the

defective components and Defendant's awareness of the problem and its effort to resolve it.

## SUPERIORITY

46.    A class action provides a fair and efficient method for the adjudication of

controversy for the following reasons:

(a)    The common questions of law and fact set forth above predominate over

any questions affecting only individual Class members;

(b)    The Class is so numerous as to make joinder impracticable.  The Class,

however, is not so numerous as to create manageability problems.  There

are no unusual legal or factual issues which would create manageability

problems;

(c)    Prosecution of a separate action by individual members of the Class would

create a risk of inconsistent and varying adjudications against Defendant

when confronted with incompatible standards of conduct;

19

(d)    The claims of the individual Class members are small in relation to the expenses of litigation, making a class action the only procedure in which Class members can, as a practical matter, recover; and

(e)    A class action would be superior to and more efficient than adjudicating thousands of individual lawsuits.

## ESTOPPEL FROM PLEADING AND TOLLING OF APPLICABLE STATUTES OF LIMITATIONS

47.    Plaintiffs hereby incorporate by reference each of the preceding allegations as though fully set forth herein.

48.    Defendants are estopped from relying upon any statutes of limitation by reason of their fraudulent misrepresentation, suppression and concealment of material facts, and any applicable statutes of limitation are tolled by such conduct.

## FIRST CAUSE OF ACTION

### (Deceptive Trade Practices)
### (Violation of General Business Law § 349 & § 350 Deceptive Acts and Practices)

49.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

50.    Plaintiffs assert this cause of action on behalf of themselves and the Class.

51.    Defendant's practices, acts, policies and course of conduct, as described above, were intended to induce, and did induce, Plaintiffs and the Class Members to purchase and/or lease the above-mentioned Vehicle with defective brake system design.

52.    Defendant sold and/or leased the Class Vehicles knowingly concealing that they contained the design defects.

53.    Defendant's practices, acts, policies and course of conduct are actionable in that:

20

(a)     Defendant actively and knowingly misrepresented to Plaintiffs and the Class Members at the time of purchase or lease that the Class Vehicles, including the brake system design of said vehicles, did not contain a material defect, were in good working order, not defective and merchantable;

(b)     Defendant failed to give adequate warnings and notices regarding the use, defects and problems with the brake system defect to consumers who purchased or leased said Class Vehicles, despite the fact that Defendant possessed prior knowledge of the inherent defects to the Class Vehicles' braking systems;

(c)     Defendant failed to disclose to Plaintiffs and the Class Members, either through warnings or recall notices, and/or actively concealed the fact from them that the brake system was defective, despite the fact that it learned of such defects in at least as early as 2005-2006.

(d)     Defendant's actions and/or omissions caused Plaintiffs and the Class Members to expend sums of money at its dealerships and elsewhere to repair and/or replace the brake system and/or brake system components, despite the fact Defendant had prior knowledge of the defects at the time of placing said vehicles into the stream of commerce.

(e)     Defendant occasionally, through its agents and representatives, has admitted to some Class Vehicles owners or lessees by its words and action, that the defect should be covered by its warranties and denied this to others. Defendant thereby maintained a secret warranty practice for some while denying it for others, thus constituting an unfair, deceptive, arbitrary and unconscionable trade practice.

54.     Each and all of the aforementioned conduct is and was deceptive, false, fraudulent and constitutes an unconscionable commercial practice in that Defendant has, by the use of false

or deceptive statements and/or knowing intentional material omissions, misrepresented and/or concealed the true defective nature of the brake system.

55.     In making these misrepresentations of fact and/or material omissions to prospective customers while knowing such representations to be false, Defendant has misrepresented and/or knowingly and intentionally concealed material facts and breached its duty not to do so.

56.     Members of the public were deceived by and relied upon Defendant's affirmative misrepresentations and failures to disclose.

57.     Such acts by Defendant are and were deceptive acts or practices which are and/or were, likely to mislead a reasonable consumer purchasing the vehicle.  Said deceptive acts and practices aforementioned are material.  The sale and distribution in New York of the Class Vehicles was a consumer-oriented act and thereby falls under the New York consumer fraud statute, General Business Law § 349 and § 350.

58.     As a direct and proximate result of these unfair, deceptive and unconscionable commercial practices, Plaintiffs and the Class Members have been damaged as alleged herein, and are entitled to recover actual and/or statutory and/or punitive damages and/or trebled damages to the extent permitted by law, including class action rules, in an amount to be proven at trial.

59.     As a result, Plaintiffs and the Class Members seek restitution of all monies that Hyundai received as a result of selling the above-mentioned vehicles to Plaintiffs and the Class Members with inherent defects at the time of purchase and/or lease, and by forcing Plaintiffs and the Class Members to expend substantial sums of money for the repair and/or replacement of the vehicles' defective brake system and/or component parts, despite the fact that Defendant had

22

prior knowledge of the Class Vehicles' defects. Plaintiffs are informed and believe that the amount of said restitution is unknown at this time, but will seek relief to amend this complaint at the time of trial, when the same has been ascertained.

60.    In addition, Plaintiffs seek punitive damages and reasonable attorneys' fees. The Declaratory Judgment Subclass Members seek a declaration that their defective brake systems must be repaired at Defendant's expense and fall within the Basic Warranty.

## SECOND CAUSE OF ACTION
### (Breach of Express Warranty)

61.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

62.    Plaintiffs and the Class members have entered into certain written warranty agreements with Hyundai. Pursuant to the Basic Warranty, Hyundai agreed it would provide Plaintiffs and the Class members with Sonata vehicles that were in proper working order and would make all such replacements or repairs "found to be defective on material or workmanship" including with respect to the components of the braking systems (e.g., rotors, calipers, hubs and pads) for each vehicle. Hyundai was therefore obligated to repair and/or service any defects or problems with the braking systems rising out of such defect, that Plaintiffs and the Class members experienced. In exchange for these duties and obligations, Hyundai received payment of the purchase or lease price for the above-mentioned Sonata vehicles from Plaintiffs and the Class members.

63.    The Basic Warranty does not exclude the failure of the rotors or calipers if occurring within 60,000 miles/60 months.

23

64.    The Basic Warranty's express terms concerning specified components of the braking system was breached by Defendant with respect to Plaintiffs and all Class members who have not exceeded the 60,000 mile/60 months, because Defendant has refused to repair the premature brake failure, including the rotors and calipers, arising from the defect for Plaintiffs and Class members even when its symptoms appear within the 60,000miles/60 months. Defendant, despite its pre-existing knowledge of the defective components, wrongfully asserts that the premature brake failure is not covered under the warranty and/or is "normal wear and tear."

65.    In addition, Defendant is aware that the defect will continue to result in brake failure even after the warranty period had lapsed and such conduct on the part of Defendant is patently unconscionable, rendering the warranty limitations unenforceable, since Hyundai was aware of basic design defects in the system prior to selling or leasing the Class Vehicles and knew or should have known that the brakes would fail prematurely, and limited the express warranty, as such, in order to render such warranty unusable or illusory. Moreover, Hyundai used its superior knowledge of the existing defect to offer a warranty which it knew or should have known would not cover the brake defects known to Hyundai to exist in the vehicles at the time of purchase or lease by Plaintiffs and members of the Class. Hyundai breached the express warranty in providing Plaintiffs and the Class with Sonata vehicles with defective brake assemblies which is has refused to repair or replace.

66.    Plaintiffs gave notice to Defendant of their respective vehicle's defect through its Dealer and agent and through its customer service division, and gave Defendant a chance to repair the defect under the Basic Warranty, which Defendant refused to do.

24

67.     Hyundai also violated the Basic Warranty and any implied covenant of good faith inherent in such agreement by selling Plaintiffs and the Class members vehicles with limited warranties under circumstances in which Hyundai knew or should have known that the defective braking systems would fail prematurely beyond the warranty period.

68.     As a result of the foregoing, Plaintiffs and the Damages Subclass members are entitled to compensatory damages for breach of express warranty in an amount to be proven at trial, and punitive damages because Defendant acted in a manner contrary to public purpose and with intent to exclude such defective brake systems. In addition, Plaintiffs seeks a declaratory judgment as set forth herein below in the Sixth Claim.

69.     In addition, with respect to Class members whose repairs were beyond the warranty period, but failed within a reasonable period thereafter, the durational limits of the warranty are unconscionable pursuant to the New York Uniform Commercial Code Sec. 2-302(1) and (2), because, as alleged herein, Hyundai knew that the brake components were defective and concealed or intentionally failed to reveal this material information to Class members in order to cause them to wait until after the warranty period to seek repairs. In addition, the Defendant intentionally limited the warranty period so as to insure it would not be responsible for what it knew was a defect which otherwise would or should have been fixed by it under the warranty.

### THIRD CAUSE OF ACTION
#### (Breach of Implied Warranty of Merchantability)

70.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

25

71.    Hyundai designed, manufactured and ultimately sold or leased the Sonata vehicles, model years 2006 - 2010, to Plaintiffs and the Class members.

72.    Hyundai was a merchant because it marketed, sold and distributed its Sonata vehicles, model years 2006 -2010 to Plaintiffs and the Class members.

73.    Hyundai reasonably expected Plaintiffs and the Class members to use the vehicles, including their brake assemblies, and such use by Plaintiffs and the Class members of the vehicles was reasonably foreseeable.

74.    At the time that Hyundai sold the vehicles to Plaintiffs and the Class members, and impliedly warranted that said vehicles, including their brake assemblies, were of merchantable quality.

75.    Hyundai breached this implied warranty because the brake assemblies that Hyundai installed in the vehicles was not of merchantable quality at the time the vehicles were sold.

76.    Hyundai had prior knowledge and notice of the defective nature of the Class Vehicles' brake assemblies and, therefore, of its breaches of warranty, but took no action to remedy the defects or to cure the breach.

77.    As a direct and proximate result of Hyundai's breaches of the implied warranty of fitness, Plaintiffs and the Damages Subclass members have been injured in an amount to be proven at trial.  Members of the Declaratory Relief Subclass are entitled to relief requested therein.

### FOURTH CAUSE OF ACTION
#### (Unjust Enrichment)

78.    Plaintiffs hereby incorporate by reference each of the preceding allegations as

though fully set forth herein.

79.    Defendant distributed the Class Vehicles into the stream of commerce with the knowledge that these vehicles would be purchased or leased by consumers based on a reasonable expectation that the brake system in the Class Vehicles would be free of defects.

80.    Defendant received funds for the sale of the Class Vehicles which were sold under Defendant's exclusive brand name and based on Defendant's reputation.

81.    Defendant distributed the Class Vehicles with the knowledge that the brake system defect made these vehicles worth less than the defect-free price being paid for them.

82.    Defendant received an economic benefit at the expense of the consumers of the Class Vehicles, including the cost and sale to Plaintiffs and the Class of parts which should have been covered and paid for by Defendants.  This includes the residential cost of the Warranty which Defendant directly conveyed to Plaintiffs and the Class members as part of the transaction with Plaintiffs and the Class members when they purchased Defendant's Class Vehicles.

83.    In the circumstances, principles of equity and good conscience make it unjust for Defendant to retain the benefit conferred on it by consumers of the Vehicles and Defendant should be required to pay for this benefit.

## FIFTH CAUSE OF ACTION
### (Breach of Contract)

84.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

85.    Plaintiffs assert this cause of action on behalf of themselves and the Class.

86.    Plaintiffs and the Class members have entered into certain contracts and warranty agreements with Hyundai. Pursuant to these contracts and agreements, Hyundai would provide Plaintiffs and the Class members with certain Sonata vehicles that were in proper working order and that were fit for their intended purpose. This included the braking systems of these vehicles. Hyundai was further obligated to repair and/or service any defects or problems with the vehicles, including the braking systems, that Plaintiffs and the Class members experienced. In exchange for these duties and obligations, Hyundai received payment of the purchase price for the above-mentioned Sonata vehicles from Plaintiffs and the Class members.

87.    Plaintiffs and the Class members satisfied their obligations under these contracts, warranties and agreements.

88.    Hyundai failed to perform as required by the contracts and agreements, and breached said contracts and agreements because it provided Plaintiffs and the Class members with Sonata vehicles with defective brake assemblies and failed to repair the defects in the vehicles' brake assemblies.

89.    Hyundai also violated the implied covenant of good faith inherent in such contracts and agreements by selling Plaintiffs and the Class members vehicles with limited warranties under circumstances in which Hyundai knew that the defective braking systems would fail beyond the warranty period.

90.    As a result of the foregoing, Plaintiffs and the Damages Subclass members are entitled to compensatory damages in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION
### (Declaratory Judgment for Declaratory Relief Subclass)

91.    Plaintiffs hereby incorporate by reference the allegations contained in all

28

preceding paragraphs of this Complaint as though set forth fully herein.

92.    Plaintiffs assert this cause of action on behalf of themselves and the Declaratory Relief Subclass.

93.    There is a justiciable dispute as to whether the defective braking systems, particularly the defective rotors and calipers, are and/or should be covered under the Basic Warranty by Defendant.

94.    By virtue thereof, Plaintiffs seek a declaratory judgment declaring that the remedial work necessary to correct the defect, alleged herein with respect to the vehicles' braking systems are covered warranty claims.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of all others similarly situated, pray for a judgment against Defendant as follows:

1.    For an order certifying the Class and/or subclasses, appointing Plaintiffs as representatives of the Class and each Subclass, and appointing the law firms representing Plaintiffs as counsel for the Class;

2.    For a declaration that the remedial work necessary to correct the defective brakes is covered by the Basic Warranty;

3.    For compensatory damages sustained by Plaintiffs and the Damages Subclass;

4.    For compensatory damages and/or restitution or refund of all funds acquired by Defendant from Plaintiffs and the Damages Subclass as a result of Defendant's unlawful, unfair, fraudulent, deceptive and unconscionable practices described hereinabove in the Consumer Protection Statute of New York, including actual and/or statutory and/or punitive damages

and/or trebled damages to the extent permitted by law, including class action rules, in an amount to be proven at trial;

5.     Trebling of damages suffered by the Class and/or appropriate subclass;

6.     Payment of costs and expenses of suit herein incurred;

7.     Both pre-and post-judgment interest on any amounts awarded;

8.     Payment of reasonable attorneys' fees and expert fees; and

9.     Such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all claims so triable.

Dated: March 5, 2012

KANTROWITZ, GOLDHAMER
& GRAIFMAN, P.C.

By:

Gary S. Graifman, Esq. (GSG-2276)
Michael L. Braunstein, Esq.
747 Chestnut Ridge Road
Chestnut Ridge, New York 10977
Tel:    (845) 356-2570

Gary E. Mason, Esq.
Nicholas A. Migliaccio, Esq.
**WHITFIELD BRYSON & MASON, LLP**
1625 Massachusetts Ave. NW, Suite 605
Washington, D.C. 20036
Tel:   (202) 429-2290

*Attorneys for Plaintiffs*

30

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
KAREN MARSHALL, PAUL FLANNERY, and          :
DARRELL R. WHITE, on behalf of themselves    :
and all others similarly situated,                        :
                                                            :
                        Plaintiffs,                        :        Case No.:_____
                                                            :
            v.                                              :        **DECLARATION OF**
                                                            :        **STEVE R. JOHNSON**
HYUNDAI MOTOR AMERICA,                        :
                                                            :
                        Defendant.                        :
------------------------------------------------------------x

I, Steve R. Johnson, pursuant to 28 U.S.C. § 1746, declare under the penalty of perjury as

follows:

1.  I am over 18 years of age and otherwise competent to testify as to the matters herein,

which are based on my personal knowledge.

2.  I am employed by Hyundai Motor America ("HMA") as Acting Director, Engineering

and Design Analysis.  For the last 21 years, part of my work on behalf of HMA has involved

evaluating the field performance of Hyundai vehicles in the United States.  Accordingly, I have

personal knowledge of the vehicles distributed by HMA in the United States.

3.  I have been informed that the above-referenced lawsuit involves a putative class of

persons who were citizens of the State of New York at the time that they purchased or leased a

2006 through 2010 model year Hyundai Sonata vehicle.

4.  Based upon my investigation, it is my conclusion that approximately 45,214 2006

model year through 2010 model year Hyundai Sonata vehicles were sold or leased as new

vehicles to buyers or lessees in the State of New York.

I declare under penalty of perjury that the foregoing is true and correct pursuant to 28 U.S.C. § 1746.

Executed this 18th day of April, 2012, at Costa Mesa, California.

Steve R. Johnson

WDC - 029016/000009 - 3393650 v3