UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KAREN MARSHALL, PAUL FLANNERY, and
DARRELL R. WHITE, on behalf of themselves and
all others similarly situated,

                        Plaintiffs,

      -v-

HYUNDAI MOTOR AMERICA,

                     Defendant.

Case No. 12-CV-3072(KMK)

OPINION & ORDER

---

Appearances

Gary S. Graifman, Esq.
Michael L. Braunstein, Esq.
Kantrowitz, Goldhamer & Graifman, P.C.
Chestnut Ridge, N.Y.
*Counsel for Plaintiffs*

Gary E. Mason, Esq.
Nicholas A. Migliaccio, Esq.
Whitfield Bryson & Mason, L.L.P.
Washington, D.C.
*Counsel for Plaintiffs*

Michael L. Kidney, Esq.
Audrey E. Moog, Esq.
John J. Sullivan, Esq.
Hogan Lovells US L.L.P.
New York, N.Y.
Washington, D.C.
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

Plaintiffs Karen Marshall ("Marshall"), Darrell R. White ("White"), and Paul Flannery

("Flannery" and, collectively, "Plaintiffs") bring this Action against Defendant Hyundai Motor

America ("HMA" or "Defendant") on behalf of themselves and a putative class of

similarly-situated owners of Hyundai Sonata vehicles, model years 2006–2010. Defendant filed a Motion To Dismiss, which, for the reasons stated herein, is granted in part and denied in part.

I.  BACKGROUND

A.  Factual History

The Court accepts all of Plaintiffs' factual allegations as true for the purposes of the instant Motion. Plaintiffs purchased Hyundai Sonata vehicles ("Sonata") from Hyundai dealerships and subsequently experienced problems with these vehicles' brake mechanisms. (Am. Compl. ¶ 1–2 (Dkt. No. 24).) Plaintiffs claim that their vehicles' brake assemblies were defective and that these defects "cause the braking system components to become severely worn and damaged, [which] may lead to a complete failure of the braking system."  (*Id.* ¶ 2.) As a result, the parts at issue needed to be replaced, but Defendant refused to cover the cost of such repair or replacement.  (*Id.* ¶ 3.)

Plaintiffs' vehicles are covered by a "bumper-to-bumper" express warranty ("Basic Warranty"), which covers "[r]epair or replacement of any component originally manufactured or installed by [HMA or several affiliate Hyundai entities] that is found to be defective on material or workmanship under normal use and maintenance . . . ."  (*Id.* ¶ 4.) The Basic Warranty covers a vehicle for five years or 60,000 miles, whichever comes first.  (*Id.*) However, it expressly provides that "brake pads and linings" are only warrantied in normal service "when the replacement is a result of a defect in material or factory workmanship," and that such replacement is only covered "for 12 months from the date of original retail delivery [or] date of first use, or 12,000 miles, whichever occurs first."  (*Id.*) Plaintiffs allege that "Sonatas are equipped with defective brakes," which cause significant squealing and premature deterioration of the rotors and pads and sticking of the calipers when the brake pedal is applied if the defect is

not corrected by replacement of brake pads, rotors and calipers, and brake assembly.  (*Id. ¶* 2.)

If uncorrected, these defects "may lead to a complete failure of the braking system." (*Id*.)

Marshall purchased a Sonata from Healy Brothers Hyundai in Mt. Kisco/Bedford Hills,

New York in November 2005.  (*Id. ¶* 23.)  When Marshall's Sonata had about 11,297 miles, a

problem with the vehicle's brakes occurred and Marshall brought the vehicle to the dealer, who

replaced the brakes under the warranty.  (*Id. ¶* 24.)  In April 2008, when the same vehicle had

about 42,782 miles, Marshall experienced vehicle vibrations when applying the brakes.  (*Id*.

¶ 24.)  Marshall brought her vehicle to Falcon Hyundai, and was told that there was excessive

wear on the vehicle's brake pads and rotors.  (*Id*.)  Defendant refused to cover replacement of

these parts under the Basic Warranty, so Marshall paid $429.45 for the replacement.  (*Id*.)

Marshall's vehicle exhibited brake vibrations again in June 2010.  (*Id. ¶* 25.)  Marshall brought

the vehicle to a local repair shop, which replaced the brake pads and rotors at a cost of $388.38.

(*Id*.)  Again, Defendant refused to cover this cost under the Basic Warranty.  (*Id*.)  Marshall

noticed the same noises and vibrations in September 2010—less than 10,000 miles since the

June 2010 repair.  (*Id. ¶* 26.)  As a result, Marshall decreased the frequency of long distance trips

in the vehicle and cancelled some trips altogether.  (*Id*.)

White purchased a Sonata from a Hyundai dealer in Syracuse, New York in October

2007.  (*Id. ¶* 27.)  In June 2009, when White's Sonata had approximately 26,739 miles, White

heard a loud grinding noise when applying the brakes and brought the vehicle to the dealer.[1]

(*Id*.)  A mechanic at the dealership allegedly told White that "this happens all the time" and that

---

[1] Plaintiffs' Amended Complaint states that this event occurred "[i]n or about June
2007," (Am. Compl. ¶ 27), but Plaintiffs' Memorandum in Opposition ("Pls.' Mem.") clarifies
that this was a typographical error, "which should have read 'June 2009,'" (Pls.' Mem. 3 n.2
(Dkt. No. 34.)).

3

his vehicle required yearly brake maintenance.  (*Id*.)  White paid approximately $310 to have his

Sonata's brakes repaired, which Defendant refused to reimburse.  (*Id*. ¶¶ 27–28.)  In September

2011, when White's Sonata had approximately 75,200 miles, it again experienced disintegration

of the brake pads and rotors, necessitating another replacement at an additional cost of $473.43.

(*Id*. ¶ 29.)

Flannery purchased a Sonata from a Hyundai dealership in Watertown, New York in

November 2007.  (*Id*. ¶ 18.)  When Flannery's Sonata had about 22,205 miles, Flannery noticed

loud notices and vibrations from the rear of the vehicle.  (*Id*. ¶ 20.)  He took his vehicle to a local

mechanic, who determined that that vehicle's brakes and rotors required replacement, at a cost of

$317.85.[2]  (*Id*. ¶¶ 21–22.)  Defendant refused to cover the repair or replacement of Flannery's

vehicle's brakes and rotors.  (*Id*. ¶ 21.)

B.  Procedural History

Plaintiffs filed this Action in New York State Supreme Court, Westchester County, in

March 2012.  (*See* Notice of Removal ¶ 2 (Dkt. No. 1).)  On April 18, 2012, Defendant removed

this case from Supreme Court, Westchester County to this Court, pursuant to the Class Action

Fairness Act 28 U.S.C. §§ 1332(d) ("CAFA").[3]  (*See* Dkt. No. 1.)  Plaintiffs filed an Amended

Complaint on May 10, 2013.  (*See* Dkt. No. 24.)  This Amended  Complaint asserts six claims

against Defendant:  (1) deceptive trade practices and false advertising in violation of General

---

[2] Plaintiffs' Proposed Amended Class Action Complaint  places this incident in
September 2011.  (*See* Graifman Decl. Ex. B, ¶ 20 (Dkt. No. 33).)

[3] CAFA grants federal courts jurisdiction over proposed class actions where the amount
in controversy exceeds five million dollars, any plaintiff is diverse from any defendant, and the
class contains at least one hundred potential members.  *See* 28 U.S.C. § 1332(d)(2)(A), (d)(5)(B).

Business Law § 349,[4] (2) breach of express warranty, specifically the Basic Warranty, (3) unjust enrichment, (4) breach of contract, and (5) a request for a declaratory judgment declaring that remedial work necessary to correct the alleged defect be covered under the vehicle warranty.[5] (*See* Am. Compl. ¶¶ 54–99.)

Pursuant to the Court's September 11, 2013 Scheduling Order, (*see* Dkt. No. 29), Defendant filed a Motion To Dismiss and accompanying Memorandum of Law ("Def.'s Mem.") on October 7, 2013, (*see* Dkt. Nos. 30, 31).  Plaintiffs filed their Memorandum in Opposition on October 28, 2013.  (*See* Dkt. No. 34.)  In addition, Plaintiffs filed the Declaration of Gary S. Graifman in Opposition to Defendant's Motion ("Graifman Decl."), (*see* Dkt. No. 33), and

---

[4] The Amended Complaint also includes a claim under General Business Law § 350, (*see* Am. Compl. ¶¶ 54–65), however Plaintiffs have decided not to pursue this claim.  (*See* Pls.'s Mem. 5 (listing the causes of action Plaintiffs allege and omitting a § 350 claim); Def.'s Mem. 10 n.5 (noting that Plaintiffs represented at the September 10, 2013 Premotion Conference that they were abandoning their § 350 claim).)

[5] Plaintiffs' Amended Complaint also asserts a claim for "breach of implied warranty," (Am. Compl. ¶¶ 75–82), however Plaintiffs have decided not to pursue this claim, (*see* Pls.' Mem. 5 n.4 (Dkt. No. 34); Graifman Decl. Ex. B, at 27 (deleting Plaintiffs' "Breach of Implied Warranty of Merchantability" cause of action from Plaintiffs' Proposed Amended Class Action Complaint)).  Here, such a claim might be barred against HMA by the lack of privity between Plaintiffs and HMA.  *See Haag v. Hyundai Motor America*, 969 F. Supp. 2d 313, 316–17 (W.D.N.Y. 2013) (dismissing the plaintiff's breach of implied warranty claim because it failed to allege sufficient privity with the defendant, Hyundai Motor America, where plaintiff had purchased his vehicle from a Hyundai dealer); *Cali v. Chrysler Grp. L.L.C.*, No. 10-CV-7606, 2011 WL 383952, at *3 (S.D.N.Y. Jan. 18, 2011) (dismissing the plaintiff's breach of implied warranty claim against the defendant auto manufacturer on the grounds that "New York law requires privity for implied warranty claims" and no privity existed between the defendant and the plaintiff, who had purchased his vehicle from a dealership), *aff'd*, 426 F. App'x 38 (2d Cir. 2011).  In addition, this claim may be time-barred by the applicable statute of limitations.  *See De Sole v. Knoedler Gallery, L.L.C.*, 974 F. Supp. 2d 274, 317 (S.D.N.Y. 2013) (noting that the four-year statute of limitations for a breach of implied warranty for a sale of goods under New York law "begins to run on tender of delivery, and that lack of knowledge of a defect has no effect on the running of the limitations period" (internal quotation marks omitted)); *Jackson v. Eddy's LI RV Ctr., Inc.*, 845 F. Supp. 2d 523, 531 (E.D.N.Y. 2012) (same).

Exhibits which include Plaintiffs' Proposed Amended Class Action Complaint ("PAC"), (*see* Graifman Decl. Ex. B).  Defendant filed its Reply ("Def.'s Reply") on November 18, 2013.  (*See* Dkt. No. 38.)

## II.  DISCUSSION

### A.  Standard of Review

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court is required to construe the factual allegations contained in the Complaint as true and draw all reasonable inferences in favor of the plaintiff.  *See Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) ("We review *de novo* a district court's dismissal of a complaint pursuant to Rule 12(b)(6), accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." (internal quotation marks omitted)); *Gonzalez v. Caballero*, 572 F. Supp. 2d 463, 466 (S.D.N.Y. 2008) (same).  Moreover, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."  *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted).

The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (citations omitted).  Instead, the Supreme Court has emphasized that "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and that "once a claim has been stated adequately, it may

be supported by showing any set of facts consistent with the allegations in the complaint," *id*. at

563.  Plaintiffs must allege "only enough facts to state a claim to relief that is plausible on its

face."  *Id*. at 570.  But if a plaintiff has "not nudged [its] claims across the line from conceivable

to plausible, the[] complaint must be dismissed."  *Id*.; *see also Ashcroft v. Iqbal*, 556 U.S. 662,

679 (2009) ("Determining whether a complaint states a plausible claim for relief will . . . be a

context-specific task that requires the reviewing court to draw on its judicial experience and

common sense.  But where the well-pleaded facts do not permit the court to infer more than the

mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the

pleader is entitled to relief.'"  (alteration in original) (citation omitted) (quoting Fed. R. Civ. P.

8(a)(2))).

 B.  Analysis

  1.  General Business Law § 349

 Plaintiffs bring a claim pursuant to section 349 of the New York General Business Law,

alleging that Defendant used "false or deceptive statements and/or knowing intentional material

omissions [to] misrepresent[] and/or conceal[] the true defective nature of the brake system,"

(Am. Compl. ¶ 59), and that such actions were "likely to mislead a reasonable consumer

purchasing the vehicle," (*id*. ¶ 62).  Specifically, Plaintiffs allege that Defendant "misrepresented

[the functionality of the brake system] to Plaintiffs . . . at the time of purchase or lease," (*id*.

¶ 58(a)), "failed to give adequate warnings and notices regarding . . . defects and problems with

the brake system," (*id.* ¶ 58(b)), "failed to disclose to Plaintiffs . . . that the brake system was

defective," (*id*. ¶ 58(c)), "caused Plaintiffs . . . to expend sums of money at [Defendant's]

dealerships and elsewhere to repair and/or replace the brake system," (*id*. ¶ 58(d)), "market[ed],

advertis[ed] and promot[ed]" the vehicles in a deceptive way that "concealed and failed to reveal

the known [brake] defect," (*id*. ¶ 58(e)), and occasionally "admitted to some . . . [vehicle] owners or lessees . . . that the defect should be covered by its warranties and denied [that it should be covered] to others . . . thereby maintain[ing] a secret warranty practice," (*id*. ¶ 58(f)).

To prevail on a § 349 claim, a plaintiff must prove "that (1) 'the defendant has engaged in an act or practice that is deceptive or misleading in a material way'; (2) the 'plaintiff has been injured by reason thereof'; and (3) the deceptive act or practice is 'consumer oriented.'" *Koch v. Greenberg*, — F.Supp.2d —, 2014 WL 1284492, at *7 (S.D.N.Y. Mar. 31, 2014) (quoting *Gaidon v. Guardian Life Ins. Co. of Am.*, 725 N.E.2d 598, 603–04 (N.Y. 1999) ("*Gaidon I*")). "[A]n action under § 349 is not subject to the pleading-with-particularity requirements of Rule 9(b), Fed. R. Civ. P., but need only meet the notice-pleading requirements of Rule 8(a) . . . ." *Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005). This claim is subject to a three-year statute of limitations. *See Schandler v. N.Y. Life Ins. Co.*, No. 09-CV-10463, 2011 WL 1642574, at *4 (S.D.N.Y. Apr. 26, 2011) (noting that "[p]rivate rights of action under section 349 are governed by a three-year statute of limitations"); *Gaidon v. Guardian Life Ins. Co.*, 750 N.E.2d 1078, 1083 (N.Y. 2001) (holding that the six-year statute of limitations for common law fraud does not apply to a claim under section 349 because it is a statutory cause of action) ("*Gaidon II*"); *Morelli v. Weider Nutrition Grp., Inc*. 712 N.Y.S.2d 551, 553 (App. Div. 2000) ("Claims pursuant to General Business Law § 349 are governed by the three-year limitation period set forth in CPLR 214(2)." (citation omitted)).

Drawing all inferences in favor of Plaintiffs, the Court interprets the Amended Complaint to allege three types of deceptive business practices by Defendant: (1) misrepresentations and omissions about the functionality of the brake system prior to Plaintiffs' purchase of their vehicles, (*see* Am. Compl. ¶¶ 58 (a)–(e)); (2) failure to disclose information about the brake

system defects through warnings or recall notices after Plaintiffs' purchase, (*id.* ¶ 58(c)); and (3) an alleged "secret warranty practice" that admits that the policy coverage should apply to some owners and lessees and denies the same to others, (*id.* ¶ 58(f)).  The Court will address each of these grounds for Plaintiffs' § 349 claims in turn.

a.  Pre-Purchase Deceptive Practices

First, with respect to Plaintiffs' claims of deceptive practices that induced Plaintiffs to purchase the vehicles in question, the Amended Complaint contains allegations suggesting that Defendant knew "that there was a manufacturing defect in the brake rotors and caliper assemblies," (Am. Compl. ¶ 30), and "continued to represent to . . . Plaintiffs, that the Sonatas, including their brake assemblies, were properly manufactured using proper materials and/or workmanship, [and were] in good working condition," (*id.* ¶ 31).  Defendant is alleged to have made these misrepresentations in "advertisements, agreements, publications, websites, owner manuals, warranty agreements, or literature given to . . . Plaintiffs and members of the [purported] Class."  (*Id.* ¶ 33.)

As the basis for their allegation that Defendant knew about the defect, Plaintiffs claim that Defendant had knowledge about the alleged defect through "pre-release testing, early service maintenance analysis and reports and data; knowledge and examination of the specifications for the various brake part[s] (e.g., rotors, hubs and caliper assemblies); knowledge of materials; and knowledge through customer complaints to Hyundi directly and through online consumer websites."  (*Id.* 37.)  Defendant urges the Court find that the Amended Complaint insufficiently pleads a § 349 claim because these factual allegations are made "upon information and belief."  (Def.'s Mem. 10.)  Indeed, there is ample case law in support of Defendant's contention.  See *Woods v. Maytag Co.*, No. 10-CV-0559, 2010 WL 4314313, at *15 (E.D.N.Y.

Nov. 2, 2010) (noting that "the plausibility of the scheme is crucial to pleading a cause of action under GBL § 349, and when the most significant contentions are made on information and belief plaintiffs will fail to set forth a cause of action under GBL § 349" (internal quotation marks omitted)); *Tinlee Enters., Inc. v. Aetna Cas. & Sur. Co.*, 834 F. Supp. 605, 610 (E.D.N.Y. 1993) (dismissing a § 349 action where "the most significant contentions made by [the plaintiff] are alleged on the basis of 'information and belief'").

Plaintiffs' PAC removes the "upon information and belief" language from these allegations, leaving the information to be plead "upon personal knowledge, and based upon the investigation conducted by their counsel."  (*See* PAC ¶ 37, page 1 (introductory paragraph).) For the purposes of the instant Motion, the Court will assume these facts as pled in Plaintiffs' PAC.  The Court also finds that the facts as pleaded in the Amended Complaint neither "lack[] specificity," nor are insufficient on their own to "plausibly suggest that the [Defendant] had knowledge of the defect" here.  *Woods*, 2010 WL 4314313, at *16; *Cf. Horowitz v. Stryker Corp.*, 613 F. Supp. 2d 271, 287 (E.D.N.Y. 2009) (dismissing claims where the "plaintiff ma[de] no reference to the specific acts, representations and/or omissions that she claimed [were] deceptive nor [did] she allege why these acts were deceptive" (internal quotation marks omitted)).  Rather, Plaintiffs' PAC provides adequate detail (even if barely) and a plausible narrative as to how Defendant knew of the alleged defect, and is therefore sufficient to satisfy the pleading requirements for a § 349 claim.  *See Szymczak v. Nissan N. Am., Inc.*, No. 10-CV-7493, 2011 WL 7095432, at *16 (S.D.N.Y. Dec. 16, 2011) (holding that an amended complaint was "sufficient to sustain a claim for a violation of Section 349" where it alleged "sufficient detail and a plausible narrative for how defendants knew of the . . . defect," and that the defendants "actively and knowingly misrepresented to [the plaintiffs] at the time of purchase or

10

lease that the [vehicles in question], including the radiator and transmission system [that formed the basis for the plaintiffs' claim], did not contain a material defect, were in good working order, not defective[,] and merchantable"); *Cf. In re MI Windows & Doors, Inc. Prods. Liab. Litig.*, Nos. 12-CV-1, 12-CV-1261, 2013 WL 1363845, at *3 (D.S.C. Apr. 3, 2013) (dismissing the plaintiff's § 349 claims where his Amended Complaint failed to plead that he "ever saw or heard a deceptive advertisement, act, or practice related to" the defendant's product, and therefore his injuries could not have been caused by the defendant's advertisements); *Wiseberg v. Toyota Motor Corp.*, No. 11-CV-3776, 2012 WL 1108542, at 6 (D.N.J. Mar. 30, 2012) (dismissing the plaintiff's § 349 claims alleging a misrepresentation by the defendant that the plaintiff's vehicle was in good condition and fit for its intended purposes at the time of purchase, where the plaintiff "did not experience any problems with the sliding door of her car under around 56,500 miles and the doors did not ultimately fail until approximately five years after she purchased her [vehicle]" because the plaintiff did "not suggest that the vehicle was in anything less than good condition at the time of purchase nor does she suggest that the [vehicle] was not fit for its intended purpose").

To the extent that Plaintiffs' § 349 claims are based upon Defendant's conduct that caused Plaintiff to purchase the vehicles at issue in this case, however, these claims are barred by the applicable three-year statute of limitations.  Accrual of a § 349 claim "is not dependent upon any date when discovery of the alleged deceptive practice is said to occur."  *See Statler v. Dell, Inc.*, 841 F. Supp. 2d 642, 648 (E.D.N.Y. 2012) ("*Statler II*").  Rather, such claims accrue when a plaintiff is injured by the actions alleged to have violated the Statute.  *See id.* ("Actions brought pursuant to Section 349 must be commenced within three years of the date of accrual, which occurs when plaintiff is injured by the deceptive act or practice that violated the statute.");

11

*Gaidon II*, 750 N.E.2d at 1083 (noting that such a claim "first occurs when plaintiff has been injured by a deceptive act or practice violating section 349").

Here, Plaintiffs allege that Defendant knowingly made misrepresentations and omitted information about the defective brake system in place on the vehicles at issue.  (*See* Am. Compl. ¶ 58(a)–(e).)  Thus, Defendant's misrepresentations or omissions were about the nature of the product itself, rather than a benefit from purchasing the product separate from the product's inherent function.[6]  As Plaintiffs allege or imply that the defective brake systems were in place when all three Plaintiffs purchased their vehicles, in 2005 and 2007, (*see* Am. Compl. ¶¶ 18, 23, 27), the injury to these Plaintiffs occurred more than three years prior to their filing of this Action in 2012 and are therefore barred by the statute of limitations.  *See Statler II*, 841 F. Supp. 2d at 648 (E.D.N.Y. 2012); *Statler v. Dell, Inc.*, 775 F. Supp. 2d 474, 484 (E.D.N.Y. 2011) (holding the plaintiff's section 349 claim to be time-barred because "accrual occurs when [p]laintiff first suffered injury" and "the allegedly faulty capacitors were present in the computers purchased at the time of delivery") (*"Statler I"*); *M & T Mortgage Corp. v. Miller*,

_____

[6] In contrast, the *Gaidon II* plaintiffs alleged that the defendants "engaged in deceptive marketing and sales practices in promoting sales of its 'vanishing premium' policies through agents' representations and personalized graphic illustrations showing that, after a specified period, 'the policy's dividends would thereafter cover the premium costs.'" *Gaidon II*, 750 N.E.2d at 1080 (citation omitted).  The New York Court of Appeals rejected the defendant's argument that the plaintiffs' section 349 claims accrued when they purchased the policies, which "failed to contain terms reflecting the vanishing premium illustrations," and instead held that plaintiffs' "injuries occurred when they were first called upon to pay additional premiums beyond the date by which they were led to believe that policy dividends would be sufficient to cover all premium costs." *Id.* at 1083–84.  The court further found that the "gravamen of [the plaintiffs'] complaints" were "not false guarantees of policy terms, but deceptive practices inducing unrealistic expectations of continuing interest/dividend rate performance to fully offset premiums at the projected date, plaintiffs suffered no measurable damage until the point in time when those expectations were actually not met, and they were then called upon either to pay additional premiums or lose coverage and forfeit the premiums they previously paid." *Id.* at 1084.

No. 02-CV-5410, 2009 WL 3806691, at *2 (E.D.N.Y. Nov. 13, 2009) (holding that since the

"plaintiffs' injuries occurred no later than the day on which they closed on 1230 Troy Ave.," that

"more than three years elapsed after the date on which plaintiffs were injured . . . before they

filed suit").  Put another way, Plaintiffs cannot claim that their injury occurred only when the

brakes failed or when they had to pay for repairs of the faulty brakes.  *See Statler I*, 775 F. Supp.

2d at 484  ("Accrual is not dependant upon any date when discovery of the alleged deceptive

practice is said to occur."); *In re Methyl Tertiary Butyl Ethar (MTBD) Prods. Liab. Litig.*, Nos.

4-CV-2389,  04-CV-3417, 04-CV-5424, 2007 WL 1601491, at *14 (S.D.N.Y. June 4, 2007)

("No discovery rule is applicable to section 349 claims."), *on reconsideration sub nom,.* 2007

WL 2936214 (Oct. 4, 2007); *Wender v. Gilberg Agency*, 716 N.Y.S.2d 40, 41–42 (App. Div.

2000) (noting that "the date of discovery rule is not applicable [to § 349 claims] and cannot serve

to extend [the three-year] limitations period").

Plaintiffs argue that their claims are saved, and Defendant estopped from relying on a

statute of limitations defense, on equitable grounds.  They argue that the doctrines of equitable

tolling and/or equitable estoppel should toll the running of the statute of limitations here.  (*See*

Pls.' Mem. 15–17.)  The Court disagrees.

"Under New York law, the doctrines of equitable tolling or equitable estoppel may be

invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud,

misrepresentations or deception to refrain from filing a timely action."  *Abbas v. Dixon*, 480 F.3d

636, 642 (2d Cir. 2007) (internal quotation marks omitted); *see also Stuart v. Stuart*, No. 12-CV-

5588, 2013 WL 6477492, at *4 (S.D.N.Y. Dec. 10, 2013) (same).  Equitable tolling applies

where a defendant's fraudulent conduct results in a plaintiff's lack of knowledge of a cause of

action.  *See Pearl v. City of Long Beach*, 296 F.3d 76, 82 (2d Cir. 2002); *DeSole v. Knoedler*

*Gallery, L.L.C.*, 974 F. Supp. 2d 274, 318 (S.D.N.Y. 2013). A plaintiff must establish that "the defendant wrongfully concealed material facts," which "prevented plaintiff's discovery of the nature of the claim," and that "plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 157 (2d Cir. 2012) (internal quotation marks omitted). Equitable estoppel, on the other hand, permits the tolling of the statute of limitations in extraordinary circumstances where the plaintiff knew of the existence of his cause of action, but the defendant's misconduct caused the plaintiff to delay in bringing suit. *See Conklin v. Jeffrey A. Maidenbaum, Esq.*, No. 12-CV-3606, 2013 WL 4083279, at *5 (S.D.N.Y. Aug. 13, 2013) ("Equitable estoppel applies only where the plaintiff can show that egregious wrongdoing by a defendant prevented the plaintiff from bringing suit on a claim of which the plaintiff was aware." (internal quotation marks omitted)).

"Due diligence on the part of the plaintiff is essential where he or she seeks relief from the statute of limitations." *Stuart*, 2013 WL 6477492, at *5 (citing *Ross v. Louise Wise Servs., Inc.*, 812 N.Y.S.2d 325, 333 (App. Div. 2006)); *see also Koch*, 699 F.3d at 157; *Abbas*, 480 F.3d at 642. Thus, "the party seeking to invoke the doctrine bears the burden of demonstrating that it was diligent in commencing the action 'within a reasonable time after the facts giving rise to the estoppel have ceased to be operational.'" *Marincovich v. Dunes Hotels & Casinos, Inc.*, 839 N.Y.S.2d 553, 556 (App. Div. 2007) (quoting *Simcuski v. Saeli*, 377 N.E.2d 713, 717 (N.Y. 1978)). "If a plaintiff is on notice of potential wrongdoing but takes no steps to investigate further, equitable estoppel does not apply because of a failure of diligence." *Stuart*, 2013 WL 6477492, at *5; *see Corp. Trade, Inc. v. Golf Channel,* No. 12-CV-8811, 2013 WL 5375623, at *6 (S.D.N.Y. Sept. 24, 2013) (finding no equitable tolling or estoppel where the plaintiff was

aware of the defendant's "complicity and culpability" in 2008, but "took no steps to further investigate" the defendant, and filed its complaint in 2012 (internal quotation marks omitted)).

And so it is here.  Plaintiffs make only the conclusory statement that "Defendant[][is] estopped from relying upon any statutes of limitation by reason of [its] fraudulent misrepresentation, suppression and concealment of material facts, and any applicable statutes of limitation are tolled by such conduct."  (Am. Compl. ¶53.)[7]  Drawing all reasonable inferences in Plaintiffs' favor, the Amended Complaint supports Plaintiffs' contention that they were unaware of the alleged defect until their vehicles needed to be repaired and Defendant denied coverage under the Basic Warranty.  (*See* Am. Compl. ¶¶ 21, 24, 27.)  Plaintiff Marshall alleges she had brake problems necessitating two replacements between the time she purchased the car in November 2005 and April 2008.  (Am. Compl. ¶¶ 23–25.)  Plaintiff White alleges to have had brake problems necessitating repair and replacement of the rotors both in June 2009, (PAC ¶ 27), and in September 2011, (Am. Compl. ¶ 29).  Plaintiff Flannery alleges that he had brakes problems in September 2011, as well.[8]  Yet, the Amended Complaint—and the PAC, for that matter—contains no allegation that repeated repairs were a cause for concern for Plaintiffs Marshall and White.  (*See* Am. Compl. ¶¶ 21, 24, 27.)  With respect to Plaintiff Flannery, Plaintiffs do not plead that he took any steps to contest or investigate Defendant's denial of

---

[7] Plaintiffs have made no effort to amend this section in their Proposed Amended Class Action Complaint, despite filing it after Defendant's Motion To Dismiss.  (*See* PAC ¶ 53.)

[8] The Amended Complaint fails to plead when Flannery experienced brake problems, though Plaintiffs' PAC places these events "in or around September 2011."  (*Compare* Am. Compl. ¶ 20 *with* PAC ¶ 20.)  Plaintiffs' PAC also contains edits to make it clear that Plaintiff requested "that Defendant cover the repair or replacement under [the Basic Warranty]" prior to "br[inging] the vehicle to a local mechanic who determined that the brakes and rotors required replacement."  (PAC ¶ 21.)  However, Plaintiffs provide no explanation as to why Flannery would inquire about warranty coverage prior to the determination that replacement was required.

coverage or to determine that the brake problem he experienced was not an isolated event. *See Stuart*, 2013 WL 6477492, at *5. In short, Plaintiffs were apprised of sufficient facts to put them on notice that reasonable diligence was required, yet do not claim to have taken action between the time their brakes required repair and the filing of this action in New York State Supreme Court, Westchester County in March 2012. (*See* Notice of Removal ¶ 2); *see also Statler II*, 841 F. Supp. 2d at 647 (noting that, even "if a plaintiff can show defense wrongful conduct sufficient to invoke a toll, the statute of limitations will nonetheless begin to run when the plaintiff either acquires actual knowledge of the facts that comprise his cause of action or should have acquired such knowledge through the exercise of reasonable diligence after being apprised of sufficient facts to put him on notice" (internal quotation marks omitted)). In evaluating the Plaintiffs' diligence, or lack thereof, "the issue is not whether plaintiff was in possession of all of the information necessary to prevail on his claims, but whether plaintiff had enough information to commence a lawsuit." *Id.* (internal quotation marks omitted); *see Torre v. Columbia Univ.*, No. 97-CV-981, 1998 WL 386438, at *8 (S.D.N.Y. July 10, 1998) (noting that "equitable tolling is intended to provide relief where a plaintiff is not aware of the existence of a cause of action, not where a plaintiff is aware of the cause of action but believes that she may not have sufficient evidence to prove her case"), *aff'd*, 189 F.3d 462 (2d Cir. 1999).

Plaintiffs further fail to "articulate acts by defendant that prevented [them] from timely commencing suit." *Woods*, 2010 WL 4314313, at *4 (alterations and internal quotation marks omitted) (quoting *Abbas*, 480 F.3d at 642). To the extent that Plaintiffs maintain that Defendant's misrepresentations, "post-sale campaign, warranty[,] and secret warranty practices . . . left [Plaintiffs] to guess in time-wasting frustration at what was causing the vehicles' failure to perform," (Pls.' Mem. 16–17), these alleged misrepresentations are part of the same deceptive

16

conduct that Plaintiffs allege forms the basis of their § 349 claims.  Specifically, the Amended

Complaint alleges that Defendant continued the same deceptive practices that persuaded

Plaintiffs to purchase their vehicles and remained silent about any defect.  (*See, e.g.,* Am.

Compl. ¶ 31 ("Hyundai . . . continued to represent to new purchasers . . . as it did with Plaintiffs

[that the vehicles] were properly manufactured"), ¶ 32 ("Defendant advertised, promoted and

marketed the fitness, safety and warranty benefits of the [Sonata]"); ¶ 33 (Defendant "failed to

provide owners of the vehicle with any written warnings or notices regarding the vehicle's

defective brakes"); ¶ 34 (asserting that Defendant "concealed the existence of the defect,"

without providing any further facts as to how Defendant did so); ¶ 37 (alleging that Defendant

"was aware of the defect" as early as 2005, but "chose to continue to produce Sonata vehicles

with defective rotors, caliper assemblies and brake assemblies").)  At best, Plaintiffs allege that

Defendant maintained the status-quo in the hopes that its customers would not discover the

defect.  But where an "alleged concealment consist[s] of nothing but [the] defendants' failure to

disclose the wrongs they had committed, [the New York Court of Appeals has] held that the

defendants were not estopped from asserting a statute of limitations defense." *Corsello*, 967

N.E.2d at 1184 (citing *Ross v. Louise Wise Servs., Inc.*, 868 N.E. 2d 189, 198 (N.Y. 2007)).

Therefore, the Amended Complaint falls short because it does not allege additional

misrepresentations by Defendant that post-date Plaintiffs' purchases and were for the purpose of

concealing the alleged prior deceptive conduct.  *See Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d

1177, 1184–85 (N.Y. 2012) (rejecting the plaintiffs' equitable tolling argument where the

plaintiffs "have not alleged an act of deception, separate from the ones for which they sue, on

which an equitable estoppel could be based"); *Ross*, 868 N.E.2d at 198 (noting that, for estoppel

to apply and thus toll a statute of limitations, the "plaintiff may not rely on the same act that

forms the basis for the claim—the later fraudulent misrepresentation must be for the purpose of concealing the former tort").

Plaintiffs have failed to plead that they were diligent in determining why their vehicles' brakes needed repair and why the Basic Warranty did not cover repair or replacement of the same. *See Jackson*, 845 F. Supp. 2d at 533 (holding that "[t]he alleged years of repairs were certainly enough to put [the p]laintiff under a duty to make inquiry and ascertain all the relevant facts prior to the expiration of the applicable Statute of Limitations," and further finding that "the unsupported statements replied upon by [the p]laintiff cannot be relied upon to invoke equity to save the claims"(internal quotation marks omitted)).  Plaintiffs have also failed to adequately plead that Defendant took additional actions to dissuade them from filing an action or to prevent Plaintiffs from discovering the alleged defect.  Accordingly, the Court finds tolling does not apply here and that Plaintiffs' § 349 claim based on Defendant's conduct prior to Plaintiffs' purchase of the vehicles is time-barred.

### b.  Post-Purchase Deceptive Practices

In addition to Plaintiffs' argument that Defendant's deceptive conduct in violation of § 349 caused them to purchase their vehicles, Plaintiffs also argue that Defendant's post-sale conduct, including Defendant's failure to cover the repair or replacement of the allegedly defective parts amounts to deceptive conduct upon which they base their claim.  As discussed above, much of the post-purchase conduct that Plaintiffs allege consists of a continuation of the same allegedly deceptive conduct that induced Plaintiffs to purchase the vehicles and cannot be deemed to have harmed Plaintiffs after they had already purchased the Sonatas.  (*See* Am. Compl. ¶ 58(a)-(e).)  Drawing all reasonable inferences from the Amended Complaint in Plaintiffs' favor, Plaintiffs allege that Defendant failed to disclose the defect to Plaintiffs "either

18

through warnings or recall notices," (*id.* ¶ 58(c)), and that Defendant's refusal to cover the defect under the Basic Warranty led Plaintiffs to "expend sums of money . . . to repair and/or replace the brake system" and its components, (*id.* ¶ 56(d)).  The Amended Complaint contains only the briefest factual allegations to support these claims, but the Court cannot say, at this point of the proceedings, that they are insufficient or implausible.  *See Statler II*, 841 F. Supp. 2d at 648–49 (noting that the court denied the defendant's earlier motion to dismiss on grounds that the determination as to "whether [the p]laintiff could establish a separate Section 349 claim based upon the allegation that [the defendant's] post-sale handling of his warranty claim amounted to deceptive conduct prohibited by the statute" required development of the record through discovery); *Statler I*, 775 F. Supp. 2d at 484–85 (denying the defendant's motion to dismiss a § 349 claim based upon alleged deceptive post-delivery conduct because "[t]he court cannot say, at this stage of the proceedings, the date upon which the [p]laintiff first suffered injury as a result of the alleged deceptive cover-up of the computer defect").

To the extent that Plaintiffs allege that Defendant's denial of coverage under the Basic Warranty violates § 349, both White and Flannery plead that they experienced claim denials within three years of initiating this Action.  (*See* Am. Compl. ¶ 24; PAC ¶ 20).  Furthermore, any failure to issue a warning or recall might include Marshall's vehicle and therefore apply to all three Plaintiffs.  Because these harms suffered by Plaintiffs occurred withing the limitations period, the Court does not see fit to dismiss Plaintiffs' post-purchase § 349 claims at this time.

### c.  "Secret Warranty" Allegation

With respect to Plaintiffs' allegations of "secret warranty" practices, Plaintiffs' Amended Complaint fails to plead a claim.  The Amended Complaint makes no allegations that Plaintiffs or anyone they know are aware of a "secret warranty practice," nor any basis whatsoever for

making this allegation.  In fact, the only mention of such a practice—let alone allegations of fact

to support its existence—is in the paragraph that makes the allegation in a conclusory fashion.[9]

(*See* Am. Compl. ¶ 58(f) ("Defendant occasionally . . . has admitted to some Class Vehicles

owners or lessees by its words and action, that the defect should be covered by its warranties and

denied this to others.  Defendant thereby maintained a secret warranty practice for some while

denying it to others . . . .").)  As Plaintiffs have simply provided no factual information to

plausibly suggest that Defendant had a "secret warranty practice," the Court finds that Plaintiffs

have failed to state a claim under § 349 on allegations that Defendant  applied a "secret

warranty" that provides coverage of the defective brakes for some, but not all, vehicle owners.

*See Haag*, 969 F. Supp. 2d at 315–16 (dismissing the plaintiffs' § 349 claim, which alleged the

same "secret warranty" practice, on the grounds that it was "unsupported by any particularized

statements of fact"); *Woods*, 2010 WL 4314313, at *16 (noting that "[c]ourts routinely dismiss

claims under GBL § 349 where the allegations are insufficiently specific to establish a deceptive

practice").

### 2.  Express Warranty

Plaintiffs allege that Defendant breached the terms of the Basic Warranty by failing to

repair or replace parts "found to be defective on material or workmanship."  (Am. Compl. ¶ 67.)

In order to state a claim for a breach of an express warranty, Plaintiffs must plead "that an

express warranty existed, was breached, and that [Plaintiffs] had relied on that warranty."  *Reed*

*v. Pfizer, Inc.*, 839 F. Supp. 2d 571, 578 (E.D.N.Y. 2012).  Defendant argues that Plaintiffs have

---

[9] Plaintiffs' PAC further fails to plead any facts that would support allegations of a "secret warranty practice," yet it continues to assert this practice as grounds for Plaintiffs' § 349 claim.  (*Compare* Am. Compl. ¶ 58(f) *with* PAC ¶ 58(f).)

failed to plead the breach of the warranty, because their claim is based on a design defect in this Sonata.  (*See* Def.'s Mem. 20–21.)  According to Defendant, such design defects are not covered by the Basic Warranty, which is limited to components that are "defective on material or workmanship under normal use and maintenance."  (*Id.*); *see, e.g., Grupo Sistemas Integrales de Telecomunicacion S.A. de C.V. v. AT&T Commc'ns, Inc.*, No. 92-CV-7862, 1996 WL 312535, at *7 (S.D.N.Y. June 10, 1996) (finding that a manufacturer's warranty that was limited to "claims based on defective materials or workmanship . . . exclude[d] claims of *design* defect—which, like 'warranty of fitness' claims, essentially allege that the equipment was unfit for its intended purpose," and that the warranty required plaintiffs to "show, more specifically, that the equipment's failure to perform resulted from a defect in materials or workmanship").

As Defendant highlights, a number of passages in the Amended Complaint suggest that Plaintiffs are alleging a larger issue with the design of Sonatas generally rather than a defect in the manufacturing or workmanship that went into each Plaintiffs' vehicle.[10]  While Defendant's reading of the Amended Complaint to allege design defects is far from baseless, Plaintiffs have pled sufficient allegations to support a manufacturing or workmanship defect to survive Rule 12(b)(6) review.[11]  For example, the Amended Complaint includes assertions that several

---

[10] For example, the second paragraph of the Amended Complaint pleads that "Sonatas are equipped with defective brakes," and that "Sonatas manifest" the squealing and premature deterioration of brake parts if not repaired, not that Plaintiffs' vehicles or some subset of Sonatas have these issues.  (Am. Compl. ¶ 2.)

[11] The Court notes that a comparison between the originally filed Complaint and the Amended Complaint in this action reveals several passages where Plaintiffs have replaced the phrase "design flaw" or "design defect" with "material and/or workmanship defect."  (*See* Def.'s Mem. 22.)  While this may not bode well for Plaintiffs' likelihood of success at later stages of this Action, the Court must take all facts in the Amended Complaint as true for the purposes of the instant Motion and draw all reasonable inferences in favor of the Plaintiffs.  *See Ruotolo*, 514 F.3d at 188 (noting that, when considering a Motion To Dismiss, the court "accept[s] all factual

components of the braking system—including rotors and calipers, which are not explicitly excluded from coverage under the Basic Warranty—suffered from "manufacturing and materials and/or workmanship defects" that caused the problems Plaintiffs experienced with their vehicles. (*Id.* ¶ 68–70.)  Plaintiffs specifically contend, for example, that there are "material and/or workmanship defects existing within the rotors, calipers, a[n]d brake assembly in the Class Vehicles," and that "the [c]aliper contains a material and/or workmanship defect" that causes it to rust, and the brake assembly is "inadequately manufactured" so that it, too, is prone to develop rust, all of which necessitated the repairs that Plaintiffs' argue should be covered by the Basic Warranty.  (*Id.* ¶ 36.)

"Whether the[] alleged defects arose from a faulty design, faulty materials or faulty workmanship cannot be ascertained absent discovery, since any information concerning the true origin of the alleged defect is within the sole possession of the defendant."  *Haag*, 969 F. Supp. 2d at 316.  Furthermore, unlike in *Cali*, the Amended Complaint sufficiently alleges a defect apart from parts expressly excluded from warranty coverage (i.e. "brake pads and linings") and does not "most plausabl[y]" suggest a design defect rather than a manufacturing or workmanship defect that would be covered by the Basic Warranty.  *Cali*, 2011 WL 383952, at *2–3 (dismissing the plaintiff' breach of express warranty claim because the complaint alleged problems with the vehicle's brakes, which were expressly excluded from the warranty, and because "plaintiff's less plausible argument that the problem concerns the . . . overall design" was also excluded by the warranty's limitation on coverage to "material, workmanship or factory preparation—not defects in vehicle design" (internal quotation marks omitted)).  Therefore, the

allegations in the complaint and draw[s] all reasonable inferences in the plaintiff's favor." (internal quotation marks omitted)).

Court finds that Plaintiffs have sufficiently pleaded a claim of Defendant's breach of the Basic

Warranty.

### 3.  Breach of Contract

"To state a claim for breach of contract [under New York law], a plaintiff must allege

'(1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and

(4) damages.'"  *Picini v. Chase Home Fin. L.L.C.*, 854 F. Supp. 2d 266, 273 (E.D.N.Y. 2012)

(quoting *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525 (2d Cir. 1994)).  Moreover, the

pleadings "must allege the provisions of the contract upon which the claim is based,*" Atkinson v.

Mobil Oil Corp.*, 614 N.Y.S.2d 36, 37 (App. Div. 1994) (citation omitted); *accord Phoenix Four,

Inc. v. Strategic Res. Corp.*, No. 05-CV-4837, 2006 WL 399396, at *10 (S.D.N.Y. Feb. 21,

2006) (collecting cases), and the defendant's acts or omissions constituting the breach, *see Abu

Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, 651 F. Supp. 2d 155, 183 (S.D.N.Y.

2009) ("[P]laintiff must provide specific allegations as to the agreement between the parties, the

terms of that agreement, and what provisions of the agreement were breached as a result of the

acts at issue." (footnote and internal quotation marks omitted)).  *See also Ellington Credit Fund,

Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 189 (S.D.N.Y. 2011) ("[S]tating in a

conclusory manner that an agreement was breached does not sustain a claim of breach of

contract." (citations omitted)).

Here, Plaintiffs' Amended Complaint does not plead the specific contract involved,

which itself may be fatal to Plaintiffs' claim.  *See Dilworth v. Goldberg*, 914 F. Supp. 2d 433,

457–58 (S.D.N.Y. 2012) (holding that the plaintiffs' claim failed because they "do not identify

what provision of the contract was violated," but rather asserted "only that [the d]efendants . . .

had . . . binding contract[s] with Westchester County . . . , plaintiff[s] [were] not a party to said

contract[s], said contract[s] were intended for the benefit of plaintiff[s], the benefits of said contract[s] to plaintiff[s] were immediate, and said defendants breached said contract[s]" (internal quotation marks omitted)).  Rather, the Amended Complaint asserts that "Plaintiffs . . . have entered into certain contracts and warranty agreements with Hyundai" pursuant to which "Hyundai would provide Plaintiffs . . . with certain Sonata vehicles that were in proper working order and fit for their intended purpose," and "repair and/or service any defects or problems with the vehicles, including the braking systems," but Defendant "breached said contracts and agreements because it provided Plaintiffs . . . with Sonata vehicles with defective brake assemblies and failed to repair the defects in the vehicles' brake assemblies."  (Am. Compl. ¶¶ 91, 93.)  These allegations are so factually sparse as to fail to meet the pleading requirement under *Twombly*.  *See Transaero, Inc. v. Chappell*, No. 13-CV-5752, 2014 WL 1783732, at *10 (E.D.N.Y. May 6, 2014) (noting that "[a] breach of contract claim will withstand a motion to dismiss only if plaintiff allege[s] the essential terms of the parties purported contract in nonconclusory language, including the specific provisions of the contract upon which liability is predicated" (internal quotation marks omitted)); *Fink v. Time Warner Cable*, 810 F. Supp. 2d 633, 645 (S.D.N.Y. 2011) (holding that the plaintiffs' "simple characterization of the nature of the promise, and the equally simplistic allegations that [the d]efendant failed to perform, [were] insufficient to make the requisite plausible factual demonstration of the basis of [the p]laintiffs' claim"), *on reconsideration*, No. 08-CV-9628, 2011 WL 5121068 (Oct. 28, 2011); *Chrysler Capital Corp. v. Hilltop Egg Farms, Inc.*, 514 N.Y.S.2d 1002, 1003 (App. Div. 1987) (holding that a complaint alleging breach of contract under New York law must "set forth the terms of the agreement upon which liability is predicated, either by express reference or by attaching a copy of the contract").

24

Even if the Amended Complaint had properly pleaded a breach of contract claim, Defendant argues that the claim would be deficient because Plaintiffs are not in privity with Hyundai.[12]  (*See* Def.'s Mem. 23–24.)  In response, Plaintiffs argue that they should be able to pursue their breach of contract claim either because Plaintiffs are third party beneficiaries to Defendant's contracts with its authorized dealers, (*see* Pls.' Mem. 21–22), or because Plaintiffs are in a relationship of "near-privity" with Defendant, (*see* Pls.' Mem. 22–23).  However, neither of Plaintiffs' arguments provides traction for their claim.

"Under New York law, a plaintiff claiming rights as a third-party beneficiary must demonstrate: '(1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for his benefit[,] and (3) that the benefit to him is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost.'"  *Fillmore E. BS Fin. Subsidiary L.L.C. v. Capmark Bank*, No. 11-CV-4491, 2013 WL 1294519, at *11 (S.D.N.Y. Mar. 30, 2013) (quoting *State of Cal. Pub. Emps. Ret. Sys. v. Shearman & Sterling*, 741 N.E.2d 101, 104 (N.Y. 2000)), *aff'd*, 552 F. App'x 13 (2d Cir. 2014); *see also Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 124 (2d Cir. 2005) (citing *State of Cal. Pub. Emps.' Ret. Sys.*, 741 N.E.2d at 104) (noting that claimant asserting third-party-beneficiary status under a contract "must establish that the parties to the contract intended to confer a benefit on the third party").

Neither Plaintiffs' Amended Complaint, nor their PAC, alleges facts to suggest that these conditions are satisfied here.  Plaintiffs' Memorandum in Opposition to the instant Motion

---

[12] In fact, Defendant suggests that the vagueness as to the details of the "contract" alleged in the Amended Complaint is due to the fact that Plaintiffs' contractual relationships are with independent Hyundai dealers rather than with HMA.  (*See* Def.'s Mem. 24 n.9.)

asserts that Plaintiffs are third-party beneficiaries to the "[sales] contracts between Defendant and its authorized dealers . . . and, in particular, the warranty provision of which Defendant is the warrantor." (Pls.' Mem. 21.) However, Plaintiffs' Amended Complaint fails to make any reference to these "sales contracts"—let alone facts from which the Court could infer that the contracts were intended to benefit Plaintiff. While Plaintiffs' contention that the "sales contracts" included the warranty provisions by which Defendant provided coverage for Plaintiffs' vehicles may provide a basis to infer that the contracting parties intended to benefit Plaintiffs, no such allegation appears in Plaintiffs' Amended Complaint or in their PAC. The Court has broadly construed Plaintiffs' Amended Complaint, however "[i]t is long-standing precedent in this circuit that parties cannot amend their pleadings through issues raised solely in their briefs." *Olde Monmouth Stock Transfer Co. v. Depository Trust & Clearing Corp.*, 485 F. Supp. 2d 387, 393 (S.D.N.Y. 2007) (internal quotation marks omitted). Accordingly, Plaintiffs have failed to plead that they are third-party beneficiaries sufficiently to survive Defendant's Motion. *See, e.g., Fillmore E. BS Fin. Subsidiary L.L.C.*, 2013 WL 1294519, at *11 ("The naked assertion . . . that the oral agreement was intended to benefit [the plaintiff] is not sufficient to survive a motion to dismiss." (internal quotation marks omitted)); *Cullen v. BMW of N. Am., Inc.*, 531 F. Supp. 555, 560 (E.D.N.Y. 1982) (finding that the defendant BMW distributer and the BMW dealership, "in establishing their distributor/dealer relationship, expressed no intent to confer a direct benefit on ultimate consumers," and that "[i]n the absence of such expression, plaintiff assumes the status of an incidental beneficiary, unable to enforce contractual rights or recover for failure to perform contractual duties"), *rev'd on other grounds*, 691 F.2d 1097 (2d Cir. 1982); *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1110 (N.Y. 2011) (holding that the plaintiff failed to plead third-party-beneficiary status where "[t]he complaint only offers

conclusory allegations without pleading the pertinent terms of the purported agreement" leaving the court "to speculate as to the parties involved and the conditions under which this alleged . . . contract was formed").

Alternatively, Plaintiffs argue that they have a right of action under the contract because Defendant and Plaintiffs are in a relationship of "near privity."  (Pls.' Mem. 22–23.)  Plaintiffs have not provided, nor has the Court found in its own legal research, any legal authority to suggest that a duty to a non-contracting party stemming from "near privity" applies outside the malpractice or negligent misrepresentation context.  *See, e.g., In re MF Global Holdings Ltd. Inv. Litig.*, No. 11-CV-7866, 2014 WL 667481, at *22 (S.D.N.Y. Feb. 11, 2014) (noting that "[b]ecause the [plaintiffs] had no contractual relationship with [the defendant], they can recover in negligence only if they can establish a relationship with [the defendant] so close as to approach that of privity." (internal quotation marks omitted)); *Direct Mail Prod. Servs. Ltd. v. MBNA Corp.*, No. 99-CV-10550, 2000 WL 1277597, at *3–5 (S.D.N.Y. Sept. 7, 2000) (finding defendant to be sufficiently closely related to a signatory to the contract at issue where the several provisions of the contract "plainly gave [the plaintiff] reason to know that one of the reasons motivating [signatory defendant] was a desire to confer a pecuniary benefit on related [defendants]" and where "because the [contract] explicitly provided that the data supplied by [plaintiff] could be used for the benefit of related [defendants], it was entirely foreseeable that the related [defendants] might  . . . become bound up in any disputes premised upon allegations of improper usage"); *Sec. Investor Prot. Corp. v. BDO Seidman, L.L.P.*, 746 N.E.2d 1042, 1048 (N.Y. 2001) (considering "whether liability can be imposed by a non-privy third party" for the purposes of the plaintiff's negligent misrepresentation claim).

In the end, Plaintiffs have failed to plead sufficient facts that they were in privity with Defendant, or that their relationship was such that they can prevail on the contract claim. *See Olde Monmouth Stock Transfer Co.*, 485 F. Supp. 2d at 393 (rejecting the plaintiff's attempt to raise new issues in their briefing in response to defendants' motion to dismiss); *Haag*, 969 F. Supp. 2d. at 316 (dismissing similar breach of contract claim because Hyundai was not in privity with plaintiff vehicle purchasers); *Mandarin Trading*, 944 N.E.2d at 1110 (dismissing the plaintiff's breach of contract claim on the grounds that, by "failing to plead the salient terms of a valid and binding contract, [the plaintiff] cannot show that the contract was intended for its immediate benefit"). Therefore this claim is dismissed.

### 4. Unjust Enrichment

In their fourth claim against HMA, Plaintiffs allege that Defendant's distribution of vehicles were "worth less than the defect-free price . . . paid for them" and failure to cover the replacement of the allegedly defective brakes unjustly enriched Defendant to Plaintiffs' detriment. (*See* Am. Compl. ¶¶ 86–88.) Defendant seeks to dismiss this claim on the ground that Plaintiffs' express warranty claim and unjust enrichment claim are mutually exclusive. (*See* Def.'s Mem. 24 ("[Plaintiffs] cannot simultaneously allege that HMA's written Limited Warranty governs the subject matter of this case and maintain an unjust enrichment claim").)

"'The theory of unjust enrichment lies as a quasi-contract claim. It is an obligation the law creates in the absence of any agreement.'" *Diesel Props S.r.l. v. Greystone Bus. Credit II L.L.C.*, 631 F.3d 42, 54 (2d Cir. 2011) (quoting *Goldman v. Metro. Life Ins. Co.*, 841 N.E.2d 742, 746 (N.Y. 2005)). Thus, when a "matter is controlled by contract," the plaintiff has no valid claim for unjust enrichment under New York law. *Goldman*, 841 N.E.2d at 746 (finding no unjust enrichment claim existed where the plaintiffs alleged that denial of insurance coverage

by [the d]efendants breached the parties' insurance agreement because "the matter is controlled by contract"); *see Statler I*, 775 F. Supp. 2d at 485 ("Where a valid contract governs the subject matter in a lawsuit, a plaintiff may not recover in quasi-contract, and it is appropriate to dismiss a claim for unjust enrichment."); *Clark–Fitzpatrick, Inc. v. Long Island R.R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987) ("The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." (citations omitted)).  "Courts interpreting New York state law have found that, in cases involving allegedly defective products, express warranties cover the subject matter at issue and an unjust enrichment claim does not lie."  *In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 863 (S.D. Ohio 2012); *see also Wiseberg v. Toyota Motor Corp.*, No. 11-CV-3776, 2012 WL 1108542, at *12 (D.N.J. Mar. 30, 2012) (dismissing the plaintiff's unjust enrichment claims on the basis that the sale of the vehicle at issue "was pursuant to a contract with specific warranty obligations that [the defendant] allegedly breached by its post-sale conduct").

Where there is a bona fide dispute as to whether a relevant contract exists or covers the disputed issue, however, courts have permitted plaintiffs to pursue both unjust enrichment and breach of contract claims.  *See Kuzian v. Electrolux Home Prods., Inc.*, 937 F. Supp. 2d 599, 618 (D.N.J. 2013) ("An unjust enrichment claim is unavailable where it simply duplicates, or replaces, a conventional contract or tort claim, but unjust enrichment may be pleaded in the alternative where there is a bona fide dispute whether a relevant contract exists or covers the dispute at issue."); *Labajo v. Best Buy Stores, L.P.*, 478 F. Supp. 2d 523, 531 (S.D.N.Y. 2007) ("When there is a bona fide dispute as to the existence of a contract, a party may proceed upon a theory of unjust enrichment, and an unjust enrichment claim may be alleged alongside a breach

of contract claim."); *Ox v. Union Cent. Life Ins. Co.*, No. 94-CV-4754, 1995 WL 634991, at *6 (S.D.N.Y. Oct. 27, 1995) (holding that, as long as a factual issue remains about the validity of the contract at issue, "recovery under a theory of unjust enrichment may be proper, even in the presence of an alternative breach of contract claim"); *Cf. Bristol Vill., Inc. v. La.-Pac. Corp.*, 916 F. Supp. 2d 357, 367 (W.D.N.Y. 2013) (dismissing the plaintiff's unjust enrichment claim where "there [was] no bona fide dispute about the existence of the express warranty, only the validity of the limitation on the amount of recovery stated therein").

Here, however, the Parties do not dispute the existence of the Basic Warranty, but rather whether Plaintiffs' injuries are covered under the terms of that agreement.[13]  (*See* Pls.' Mem. 17 (claiming that "Plaintiffs allege a defect in *materials and/or workmanship*, not design, contrary to Defendant's assertions, and [Plaintiffs'] allegations fall within the scope of the 'materials or workmanship warranty' provided to them with the purchase of their vehicles"); Def.'s Mem. 19.) While at this stage of proceedings, it is unclear whether or not the Basic Warranty applies to the allegedly defective brakes, the Court cannot find that the pleadings suggest a "bona fide dispute about the existence of the express warranty."  *Bristol Vill., Inc.*, 916 F. Supp. 2d at 367. Plaintiffs' unjust enrichment claims are accordingly barred, as they seek to "simply duplicate[] . . . a conventional contract" claim for Defendant's alleged breach of the Basic Warranty. *Corsello*, 967 N.E.2d at 1185.

---

[13] In fact, another district court in the Second Circuit has already told Plaintiffs' counsel that a claim for unjust enrichment concerning HMA's failure to cover replacement brakes is precluded by an express warranty claim against HMA.  *See Haag*, 969 F. Supp. 2d at 317 ("It is well settled that where a valid warranty governs the subject matter of a suit, a plaintiff cannot recover in quasi-contract, and it is appropriate to dismiss and unjust enrichment claim.").  The *Haag* court further found that "[h]aving chosen to sue for breach of warranty, plaintiff cannot plead an alternative quasi-contract claim in the hopes of modifying the terms of that warranty." *Id.*

### 5.  Declaratory Judgment

Lastly, Plaintiffs seek a declaratory judgment to the effect "that the remedial work necessary to correct the Vehicles' braking system is covered by the warranty."  (Pls.' Mem. 24; s*ee* Am. Compl. ¶ 99.)  "'It is within the broad discretion of the trial court whether to exercise declaratory jurisdiction.'"  *Deutsche Alt-A Sec. Mortg. Loan Trust, Series 2006-OA1 v. DB Structured Prods., Inc.*, 958 F. Supp. 2d 488, 507 (S.D.N.Y. 2013) (quoting *Camofi Master LDC v. Coll. P'ship, Inc.,* 452 F. Supp. 2d 462, 480 (S.D.N.Y. 2006)); *see also Muller v. Olin Mathieson Chem. Corp.*, 404 F.2d 501, 505 (2d Cir. 1968).  Here, however, Plaintiffs have already asserted the same remedy for which they seek declaratory judgment in Plaintiffs' claim for breach of express warranty.  (*See* Am. Compl. ¶ 73 ("In addition, Plaintiffs seek[] a declaratory judgment as set forth herein below in the Sixth Claim.").)  "[C]ourts have found declaratory judgment to be inappropriate where a party has already invoked its right to a coercive remedy."  *Piven v. Wolf Haldenstein Adler Freeman & Herz L.L.P.,* No. 08-CV-10578, 2010 WL 1257326, at *11 (S.D.N.Y. Mar. 12, 2010); *see also Apple Records, Inc. v. Capitol Records, Inc.,* 529 N.Y.S.2d 279, 281 (App. Div. 1988) ("A cause of action for a declaratory judgment is unnecessary and inappropriate when the plaintiff has an adequate, alternative remedy in another form of action, such as breach of contract."); *Assured Guar. Mun. Corp. v. UBS Real Estate Sec., Inc.,* No. 12-CV-1579, 2012 WL 3525613, at *6 (S.D.N.Y. Aug. 15, 2012) (same).  Here, as Plaintiffs have sought the same relief arising out of the alleged breach of the Basic Warranty agreement as in Plaintiffs' request for declaratory judgment, Plaintiffs' request for declaratory judgment is duplicative of their other claims and is dismissed without prejudice.

C.  Leave to Amend

Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2).  It is "within the sound discretion of the district court to grant or deny leave to amend."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  "Leave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'"  *Ruotolo*, 514 F.3d at 191 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiffs have now amended their Complaint one time and have attached a "Proposed Amended Class Action Complaint"  along with their materials in response to Defendant's Motion To Dismiss.  The PAC was filed as a result of the Court's discussion with the Parties at the September 10, 2013 premotion conference, (*see* Dkt. (minute entry for Sept. 10, 2013)), and issues discussed by the Parties in their premotion letters, (*see* Dkt. Nos. 27, 28).  Thus, Plaintiffs' failure to fix the deficiencies in their initial complaint, after being provided with full notice of it, is alone sufficient ground to deny leave to amend.  *See In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the [amended complaint] by the defendants and given a chance to amend their [amended complaint]," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110 (2d Cir. 2007).  Accordingly, the Court declines to grant Plaintiff leave to amend.

III.  CONCLUSION

For the reasons stated above, Defendants' Motion To Dismiss is Granted in part and

Denied in part: the Motion is Granted with respect to Plaintiff's breach-of-contract, unjust

enrichment, and declaratory judgment claims.  The Motion is Denied with respect to Plaintiffs'

express warranty and § 349 claims, insofar as the § 349 claim is based on Defendant's conduct

after Plaintiffs purchased their vehicles.  Defendant's Motion is Granted with respect to all other

§ 349 claims.

The Clerk of the Court is respectfully requested to terminate the pending Motion.

(*See* Dkt. No. 30.)

SO ORDERED.

Dated: September 30, 2014
         White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

33