## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

| | |
|---|---|
| **KAREN MARSHALL, PAUL FLANNERY** | : |
| **And DARRELL R. WHITE, on behalf of** | : |
| **themselves and all others similarly situated,** | : |
| | : |
| **Plaintiffs,** | : |
| | : |
| **v.** | : |
| | : |
| **HYUNDAI MOTOR AMERICA,** | : |
| | : |
| **Defendant.** | :    **(REDACTED)** |

-----------------------------------------------------------------x
-----------------------------------------------------------------x

| | |
|---|---|
| **STEVE MILLER, RICHARD KOTELLY,** | : |
| **KATHLEEN RIORDAN, CHARLENE LIDDLE,** | : |
| **KRISTA PIERSKALLA and REBECCA** | : |
| **MCCORMICK, on behalf of themselves and** | : |
| **all others similarly situated** | : |
| | : |
| **Plaintiffs,** | :    **Case No. 15-CV-04722 (CM),** |
| | :    **12-CV-03072 (CM)** |
| **v.** | : |
| | : |
| **HYUNDAI MOTOR AMERICA,** | : |
| | : |
| **Defendant.** | : |

-----------------------------------------------------------------x

## PLAINTIFF'S REPLY MEMORANDUM OF LAW IN
## FURTHER SUPPORT OF MOTION FOR CLASS CERTIFICATION

KANTROWITZ, GOLDHAMER
& GRAIFMAN, P.C.
747 Chestnut Ridge Road
Chestnut Ridge, New York 10977
(845) 356-2570

*[Additional Counsel on Signature Page]*

***Attorneys for Plaintiffs***

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ……………………………………………………………1

BACKGROUND…………………………………………………………………………..3

ARGUMENT……………………………………………………………………….......6

I.  Plaintiffs Satisfy Commonality and Typicality………………………………………….6

  A.  Common Issues With Regard to the §349 Claim……………………………………6

  B.  The PUTPCPL Class Claim Should Proceed………………………………….......8

  C.  Commonality and Typicality Are Satisfied For the Warranty Claim……………......9

II.  Plaintiffs Have Demonstrated that Common Issues Will Predominate…………………….........9

  1.  Under Plaintiff's Theory, Common Evidence Will Suffice for Each Member to Make a Prima Facie Showing of Liability, and Will Drive Resolution of the Suit………...12

    a.  Common evidence will establish Defendant's deceptive omission and its materiality to consumers………………………………………………….......13

    b.  Common evidence will establish that the class suffered common injuries  14

      i.  The New York Class may recover readily calculable statutory damages ……………………………………………………………14

      ii.  The Classes may recover price inflation and/or cost of repair damages……………………………………………………………..18

  2.  Defendant's "Individualized Defenses" are Common Issues with Common Proof…20

    a.  Under Plaintiff's theory, Causation is a Common Issue………………..21

    b.  Variation in Driving Habits Do Not Preclude Predominance………….22

  3.  HMA's Policies and Procedures Strictly Govern Warranty Coverage and Interpretation…………………………………………………………………22

  4.  Plaintiffs Easily Demonstrate Common Class-Wide Defects………………………24

  5.  HMA's Assertion That Proof of Presentation On The Warranty Claim Is Required Should Be Rejected By This Court And, In Any Event, Does Not Destroy Predominance …………………………………………………………...26

6.  Defendant's Affirmative Defense of Statute of Limitations Does Not Defeat Predominance and Is, In Any Event, a Merits Issue…………………………………27

III.  Alternatively, a Rule 23(b)(2) Class Is Appropriate…………………………………………...29

IV.  A Rule 23(c)(4) Issues Class Would, Alternatively, Also Advance the Litigation…………....29

## TABLE OF AUTHORITIES

<u>CASES</u>

*Adkins v. Morgan Stanley*
No. 12 CV 7667 (HB), 2013 U.S. Dist. LEXIS 104369, at *10 (S.D.N.Y. July 25, 2013)……......14

*Amgen, Inc. v. Conn. Ret. Plans and Trust Funds*
133 S. Ct. 1184 (2013)…………………………………………………….…………….…….12

*Baur v. Veneman*
352 F.3d 625 (2d Cir. 2003)……………………………………………………………......14

*Broe v. Oneonta Sales*
420 N.Y.S.2d 436 (Sup. Ct. 1978)…………………………………………………………….27

*Butler v. Porche Cars N.A., Inc.*
2017 WL 1398316 (N.D.Ca. April 19, 2017)……………………………………………………..8

*Butler v. Sears Roebuck and Co.*
727 F.3d 796 (7th Cir. 2013)…………………………………………………………………11

*Cameron v. E.M. Adams & Co.*
547 F.2d 473 (9th Cir. 1976)……………………………………………………………..27

*Carriuolo v. GM Co*
 823 F.3d 977 (11th Cir. 2016)…………………………………………………………….18

*Chanel, Inc. v. Gardner*
2010 U.S. Dist. LEXIS 140233, at *13 (S.D.N.Y. Apr. 6, 2010)…………………………………14

*Claridge v. N. Am. Power & Gas, LLC*
Case No. 15-1261, 2016 U.S. Dist. LEXIS 165229, (S.D.N.Y. Nov. 30, 2016)……….................22

*Cohen v. Rosicki, Rosicki & Assocs., P.C.*
897 F.3d 75 (2d Cir. 2018)……………………………………………………………..14, 15

*Daffin v. Ford Motor Co.*
458 F.3d 549 (6th Cir. 2006) …………………….…………………………………….9, 17

*Daniel v. Ford Motor Co.*
2016 U.S. Dist. LEXIS 130745, (E.D. Cal. Sep. 23, 2016)…………………………………............9

*DeMarco v. Nat'l Collector's Mint, Inc.*
229 F.R.D. 73 (S.D.N.Y. 2005)……………………………………………………..……………25

*Denney v. Deutsche Bank AG*
443 F.3d 253 (2d. Cir. 2006)………………………………………………………………17

*Duprey v. Connecticut DMV*
191 F.R.D. 329 (D. Conn. 2000)………………………………………………………...28

*Edwards v. Ford Motor Company*
603 Fed. Appx. 538 (9th Cir. 2015)………………………………………………12, 25

*Famular v. Whirlpool Corp.*
No. 16 CV 944 (VB), 2019 U.S. Dist. LEXIS 44907, (S.D.N.Y. Mar. 18, 2019)………………14

*Feliciano v Gen. Motors LLC*
14 CIV. 06374 (AT), 2016 WL 9344120, (S.D.N.Y. Mar. 31, 2016)……………………..……..26

*Flores v. Anjost Corp.*
284 F.R.D. 112 (S.D.N.Y. 2012)………………………………………………………………11

*Geismar v. Strauss*
109 Misc. 2d 495 (Dist. Ct. Suffolk Cty. 1981)………………………………………………16

*Guido v. L'Oreal, USA, Inc.*
No. 2:11-cv-01067, 2014 U.S. Dist. LEXIS 165777, (C.D. Cal. July 24, 2014)………………19

*Haag v. Hyundai Motor Am,*
No. 12-CV-6521L, 2019 WL 1029002 (W.D.N.Y. Mar. 5, 2019)…………………1, 2, 6, 7, 13, 16

*In Re Arris Cable Modem Consumer Litigation Class Action*
2018 WL 3820619 (N.D. Ca. Aug. 10, 2018)……………………………………………...25, 26

*Jermyn v. Best Buy Stores, L.P.*
256 F.R.D. 418 (S.D.N.Y. 2009) ……………………………………………………………..11

*Jermyn v. Best Buy Stores, L.P.*
 276 F.R.D. 167 (S.D.N.Y. 2011)………………………………………………………………15

*Just Film, Inc. v. Buono*
847 F. 3d 1108 (9th Cir. 2017)………………………………………………………………...26

*Kaczmarek v. IBM,*
86 F.R.D. 307 (S.D.N.Y. 1999)………………………………………………………………12

*Khoday v. Symantec Corp.*
No. 11-180, 2014 U.S. Dist. LEXIS 43315, (D. Minn. Mar. 31, 2014)…………………………19

*Koch v. Acker, Merrall & Condit Co.*
18 N.Y.3d 940, N.E.2d 675 N.Y.S.2d 452 (2012)…………………...…………………………..22

*Kurtz v. Kimberly-Clark Corp.*
321 F.R.D. 482 (E.D.N.Y. 2017)…………………………………………………………...14

*Little v. Kia Motors America, Inc.*
455 N.J. Super. 411, 190 A.3d 502 (N.J. Super. Court App. Div. July 18, 2018) …………..2, 27

*Marshall v. Hyundai Motor America, Inc.*
51 F.Supp.3d 451 (S.D.N.Y. 2014)…………………………………………………………….9

*Martin v. Ford Motor Co.*
765 F.Supp.2d 673 (E.D.Pa.2011)…………………………………………………………….27

*Mazzanti v. Gen. Elec. Co.*
No. 13-1799, 2017 U.S. Dist. LEXIS 32903, (D. Conn. Mar. 7, 2017) …………………………10

*McCullock v. H.B. Fuller Co.*
61 F.3d 1038 (2d Cir. 1995)…………………………………………………………………….25

*McDonald v. North Shore Yacht Sales, Inc.*
134 Misc. 2d 910, (Sup. Ct. Nassau 1987)……………………………………………………….15

*Miller v. Hyundai Motor America*
2016 WL 5476000 (S.D.N.Y. Sept. 28, 2016)…………………………..…………………………27, 28

*Millman v. Mitsubishi Caterpilllar Forklift Am., Inc.*
594 F.Supp.2d 230 (N.D.N.Y. 2009)…………………………………………………………….25

*Mullaney v. Delta Air Lines, Inc.*
258 F.R.D. 274 (S.D.N.Y. 2009)………………………………………………………………….8

*Newman v. RCN Telecom Services, Inc.*
238 F.R.D. 57 (S.D.N.Y. 2006) …………………………………………………………………..7

*N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*
2014 U.S. Dist. LEXIS 35326, *22 (S.D.N.Y. Mar. 17, 2014)………………………………….28

*Oscar v. BMW of N. Am.*
274 F.R.D. 498 (S.D.N.Y. 2011) …………………………………………………………...11

*Parkinson v. Hyundai Motor Am.*
258 F.R.D. 580 (C.D. Cal. 2008)………………………………………………………….22

*Pella Corp. v. Saltzman*
606 F.3d 391 (7th Cir. 2013) ……………………………………………………………..9

*Roach v. T.L. Cannon Corp.*
778 F.3d 401 (2d Cir. 2015)………………………………………………………….…..18

*Rosen v. J.M. Auto Inc.*
270 F.R.D. 675 (S.D. Fla. 2009) (citing *In re Canon Cameras*, 237 F.R.D. at 359)……………20

*Sanchez-Knutson v. Ford Motor Co.*
310 F.R.D. 529 (S.D. Fla. 2015)………………………………………………………..18, 19

*Samuel-Bassett v. Kia Motors America, Inc.*
613 Pa. 371 (2011)……………………………………………………………………….27

*Sanneman v. Chrysler Corp.*
191 F.R.D. 441 (E.D. Pa. 2000)…………………………………………………………12

*Schmidt v. Ford Motor Co.*
972 F.Supp.2d 712 (E.D.Pa. 2013)………………………………………………………27

*Solomon v. Bell Atl. Corp.*
 (Def. Br. 12) ………………………………………………………………………….…..8

Sykes v. Mel S. Harris & Assocs. LLC
780 F.3d 70 (2d Cir. 2015) …………..…………………………………………………9

*Tait v. BSH Home Appliances Corp.*
289 F.R.D. 466 (C.D. Cal. 2012)…………………………………………………….…...22

*Taylor v. Zucker*
2015 U.S. Dist. LEXIS 98877 (S.D.N.Y. July 27, 2015)……………………………………23

*Weiss v. La Suisse, Societe D'Assurances Sur Le Vie*
226 F.R.D. 446 (S.D.N.Y. 2005)……………………………………………………...25

*Wolin v. Jaguar Land Rover N.A., LLC*
617 F.3d 1168 (9th Cir. 2010)……………………………………………..…………17, 25

<u>RULES</u>

Fed. R. Civ. P. 23(c)(4)……………………………………………………………..30

## PRELIMINARY STATEMENT

Plaintiffs submit their reply memorandum in further support of the motion for class certification and in reply to the opposition of Hyundai Motor America ("Defendant" or "HMA").

It comes as no surprise that Defendant desperately attempts to distance itself from the vast number of internal documents which HMA created to document both the brake defect involved herein and HMA's own early knowledge of that defect including those compiled in HMA's Field Service Evaluations ("FSE"), Quality Information Reports ("QIR"), HATCI Reports, and the thousands of consumer complaints HMA fielded in its national Customer Assistance Call Center ("CACC").[1]  All of these demonstrate one overriding and common issue (the HATCI Report even refers to it as a "common issue" and offered a proposed uniform fix)—that is, the brake parts covered under the Basic Warranty (*e.g.,* rotors, calipers, sliders and clips, also referred to herein as "Covered Brake Parts") corrode during and immediately after the warranty, sometimes multiple times.  This resulted in Covered Brake Parts that are supposed move freely in a working brake, instead seizing up, resulting in burning, judder, vibration and premature wear of the Covered Brake Parts.  The uniform question in this case is simply put and was, ironically, enunciated by Judge Larimar in the related Santa Fe brake defect case:  A jury could find these brakes were defective, that "defendant was aware of a defect in the Class Vehicles" and "misled class members as to the existence of that defect in a manner that was material to them, causing damages."[2]  It was an

---

[1] HMA's own documents are set forth in Plaintiff's original motion as Exhibits 1 (Mando Salt Spray Tests), 2 (Early HATCI Report), 3 (QIR), 4 (HATCI Report), 5 (QIR), 20 (CACC), 21 (QIR), 22 (FSE), 23 (FSE), 24 (FSE) to the Declaration of  Gary S. Graifman in Support of Plaintiffs' Motion for Class Certification dated Dec. 5, 2018 (ECF Doc. 85) ("Graifman Decl." hereinafter).  Unless otherwise noted, all references to Exhibits are to the Exhibits to the Graifman Decl.

[2] *See, Haag v Hyundai Motor Am.,* 12-CV-6521L, 2019 WL 1029002, at *2 (W.D.N.Y Mar. 5, 2019). Judge Larimar in his decision on class certification, found the elements of Rule 23(a) were satisfied by Plaintiff (*e.g.,* numerosity, adequacy, typicality and common questions) and that under Rule 23(b)(3), common questions predominated as to liability, but then, found that, because he perceived,

identical common issue which convinced the New Jersey Appellate Division to recently affirm a

similar brake defect case which was tried as a class action against Hyundai's related affiliate, Kia

Motors America in *Little v. Kia Motors America, Inc.,* 455 N.J. Super. 411, 190 A.3d 502 (N.J.  Super.

Court App. Div. July 18, 2018).

If the answer to the above is affirmative, then class members who paid for brake repairs due

to corrosion, are entitled to damages either in the form of reimbursement of repair costs or the

statutory award under New York GBL §349's statutory damages provision or, alternatively, in the

form of diminution of value damages. [3]  An answer to that question significantly advances the

litigation and HMA's attempt to distract from those common questions should be rejected.

For example, Defendant's simplistic claim (Def. Br. 1-2) that "brakes wear out" is no

response to the fact that HMA's warranty covers the Covered Brake Parts and the brake calipers and

rotors are not wear and tear items.  Defendant's own engineer, Kisoo Lee, testified that Hyundai

expects the brake caliper and all internal components to last the life of the vehicle because they are

not consumable.  The actual specification he was referring to states █████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████ *See*, **Exh.**

**"18"** to Graifman Decl.; s*ee also* Lee Dep. at **Exh. 17**, at p. 42:8-17.  Yes, brake pads wear out.  But

---

wrongly it is submitted, that classwide damages were not demonstrated, a class would not be
certified.
[3]  Plaintiffs' initial motion herein submitted that repair-and-replace damages are, *a fortiori*, a class-
wide method of assessing damages and that the actual amounts involved would be a merits
argument based on the average cost of repair, as it was in the *Little* case. Similarly, Plaintiffs' initial
motion submitted that the issue of diminution of value damages was, more appropriately, a merits
issue.  Given Judge Larimar's decision in *Haag*, Plaintiffs submit herewith a brief Declaration of
Steven Gaskin which demonstrates that a class-wide conjoint analysis which has withstood *Daubert*
challenges in numerous other cases, including automobile defect cases, would be a viable method
herein to accomplish that in the merits stage. See Gaskin Decl. annexed as **Exh "3"** to Reply
Declaration of Gary S. Graifman dated April 22, 2019 ("GSG Reply Decl." hereinafter).

calipers, clips and rotors should not, certainly not during the warranty, and this case is not about brake pads, which Plaintiffs concede is not a Covered Brake Part, as it is excluded by the warranty.

In contradictory fashion, HMA then states (Def. Br. 2) that the parts should have been covered under warranty, noting that "the available evidence indicates that far more often than not, claims related to the brake components at issue *were* covered under warranty." (emphasis in original). Plaintiffs appreciate the admission that claims involving corrosion of Covered Brake Parts indeed should have been covered and HMA that should have paid for the repairs.  However, the essential point HMA misses is that thousands of class members with corroded parts covered under that warranty *were refused coverage by HMA*. Nonetheless, this dazzling admission by HMA that the parts ***should have*** been covered raises a common issue.

Finally, while HMA handily attempts to pawn off the responsibility for warranty decisions to the dealers, this ignores the indisputable evidence that internal documents indicated that the problem emanated from a basic flaw in the Covered Brake components themselves (*e.g., see* ▮▮▮▮▮ (**Exh. 4**) and the ▮▮▮▮, **Exhs**. **3** & **5**). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮. Interestingly, class members were not told the parts should have been covered as HMA's brief now admits. In many cases, this occurred after the ▮▮▮▮▮, HMA's managers (*e.g.*, such as the District Parts Service Manager or "DPSM"), or regional directors reviewed the class member's request for coverage. *See*, GSG Reply Decl., at **Exhibit "1,"** which submits a sample of ▮▮▮▮▮ demonstrating HMA's direct involvement in the thousands of decisions over warranty coverage.

## BACKGROUND

The Class Vehicles and brake parts herein are covered by the same warranty regardless of model year of the Class Vehicles.  HMA concedes that. (Def. Br. p. 4, n.2).  In addition, the Covered Brake Parts are all identical.  *See* Def. Br., p. 4 at Subd. A which discusses the uniform brake

components.  Moreover, despite HMA's attempt to distract from these similarities, HMA's 30(b)(6)

witness, Gregory Webster conceded all the Covered Parts are covered under the 5 year 60,000 mile

Basic Warranty, not the more limited 12 month/12,000 mile warranty, which would apply to brake

pads and brake linings.  *See* Webster Dep at pp. 97, 98, 209, Excerpts of Webster's Dep. annexed to

the GSG Reply Decl. as **Exhibit 2.**

Moreover, even though the ███████████ (**Exh.'s 2** and **4**) revealed a common issue

for the defect, and informed the dealers to ████████████████████, HMA *never*

sent any notice to customers to inform them of this. (Webster Dep., p. 202).

The fact that it snows in the wintertime in the northeastern parts of the United States is no

excuse for concealing the fact that these brakes corrode and seize prematurely, during the Basic

Warranty and much quicker than other vehicles.  However, the fact that it snows in this area

appeared to surprise the Koran engineers, who testified ████████████████████[4]

Moreover, █████████████████ (**Exh. 5**, starting at HMAM_002591),

documented ████████████████████████

███████, (HMAM_002592) and concluded that "road conditions" were "***not applicable***" and

"weather conditions" were "***not applicable***" to the condition observed (bottom of

HMAM_002591).  In addition, the exclusion in the warranty for "salt" cannot be relied upon by

HMA as that is located in the "Act of God" section and HMA's witness, Webster, conceded that

clause is ████████████████████████

███████████ (Webster Dep., **Exh. 2** of Graifman Reply Decl. at pp. 215-217).  Webster

however, could not confirm if the presence of "salt" was being used as an excuse by HMA's dealers

---

[4] Gwang-Yun Kim ("Kim"), Hyundai's engineering witness, testified that ████████████████

████████████████████████ **" Exh. "31"** Kim Dep., 29:3-31:9 ████████████

████████████████████████

to refuse coverage.  Nonetheless, class members and class representatives who washed their vehicles regularly in the winter (*e.g.*, Miller, Liddle, White, McCormick, Marshall) or garaged their vehicle (*e.g.*, Miller) were *still* refused coverage for corroded Covered Brake Parts.  ████████████ responses are also full of denials to class members who had the vehicle inspected or serviced at 15,000 miles as HMA claims they should (See Exh. "1," GSG Reply Decl., at ████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████ Moreover, each Plaintiff had a brake problem during the 5 year/60,000 mile Basic Warranty and was charged for one or more repairs for Covered Brake Parts as the chart annexed hereto as Appendix A makes clear.

As HMA's  30(b)(6) witness Greg Webster testified, ██████████████████████████

███████████████████████████████████████████████████

██████████████. *See* Deposition of Greg Webster ("Webster Dep."), at 239:11-15.[5]

Further, and contrary to HMA's suggestions, HMA employs safeguards to ensure that the warranty coverage process does not devolve into a non-uniform decision-making process:

Q ████████████████████████████████████

A ████████████████████████████████████████
████████████████████████████

Q ████████████████████████████████
████

A ████████████████████████████████████
██████████████████████████████████

<hr />

[5] Excerpts of Mr. Webster's depositions are attached as **Ex. 2** to GSG Reply Decl.

Webster Dep. at 239:16 – 240:6.  Furthermore, HMA maintains a " See **Exh. 14** at page 4-3 and page 4-5 (at

Sec. 4.1.3).  Finally, it is *HMA who warranted the Class Vehicles* and component parts to class members,

*not* the dealers.

<u>**ARGUMENT**</u>

**I.      Plaintiffs Satisfy Commonality and Typicality**

Of the four required elements of Rule 23(a), HMA in its opposition does not contest

numerosity or adequacy.  Accordingly, those are conceded.  Defendant's challenge to commonality

and typicality must also be rejected as having no basis in law or fact.

**A.   There are Common Issues with Regard to the §349 Claim.**

As noted above, in the *Haag* matter, Judge Larimar made clear that more than one common

issue existed to satisfy the common issue requirement of Rule 23(a).  *Haag*, at *2.  Again, Defendant

argues nonsensically that by Plaintiffs' claiming HMA violated §349 in two ways, this somehow

destroys the ability to certify a class (Def. Br. 9-10).  If that were the case, a defendant need only

make sure they violate §349 in more than one way to be able to scott-free from any claim.  Talk

about turning a statute on its head!

At minimum, the jury should hear the claims that HMA violated §349 by (i) omitting the

material information that the brakes were defective, seized up easily and that HMA had no intention

of covering the defect (e.g., note the HATCI Report stating repair should be a "customer pay"

event);  and (ii) omitting the material information that the defective brakes on Class Vehicles would

6

cost class members money to repair the Covered Brake Parts under the warranty.  As set forth in

Plaintiffs initial brief ("Plffs Opening Br."), p. 28, additional common questions exist.   This does

not detract from the fact that Plaintiffs  and the class suffered the same injuries, to wit, (i) the

purchase of a Class Vehicle with defective brakes which they otherwise would not have done and (ii)

the fact that they were improperly saddled with fixing those defective Covered Brake Parts at their

cost and expense.  Notably, Judge Larimar recognized the existence of these common questions

twice.  In denying Defendant's earlier motion for summary judgment he held that issues of fact

existed as to: "whether the brake parts at issue were actually defective; whether and to what extent

defendant was aware of the defect; whether defendant concealed or omitted information concerning

the defect and/or the scope of relevant Warranty coverage to plaintiff in connection with plaintiff's

purchase of her vehicle; whether the omission of such information is material; and whether and to

what plaintiff's damages are attributable to the concealment or omission of information by

defendant…" *Haag v. Hyundai Motor Am.,* 294 F.Supp.3d 102, 106 (W.D.N.Y. 2018).  Then, as noted

*supra*, in connection with the class certification motion, the Court found common issues sufficient

for Rule 23(a)(3) existed on the GBL §349 claim.

     While Defendant argues alternatively, that information Plaintiffs may have learned after their

purchase might have differed (Def. Br. 11), that is irrelevant for two reasons.  First, the actionable

omissions alleged herein derive from the warranty HMA promised to each Plaintiff and class

member, and its material omission as to the defect.  Second, subjective reliance—which is exactly

what HMA argues under the guise of "independent research" —is irrelevant under § 349.  The

standard is clear and unassailable as a matter of law:  Whether a reasonable consumer acting

reasonably would consider the omitted information material.  Thus, whether Miller did post-repair

research of brake complaints to learn that HMA lied to him (Def. Br. 11) or White spoke with his

mechanic who did the repair on the Covered Brake Parts and thereby learned the fact the brakes

were defective (*Id.*) are irrelevant.  As such, Defendant's cases (Def. Br. 12) are wholly

distinguishable.  *Newman v. RCN Telecom Services, Inc.*, 238 F.R.D. 57 (S.D.N.Y. 2006) was a case

involving *affirmative misstatements*, not omissions and centered on statements that certain internet

service speeds were promised by defendant but not delivered.  *Id.* at 62 & 64.  Similarly, *Solomon v.

Bell Atl. Corp.* (Def. Br. 12) involved *affirmative misstatements* implicating "which advertisements

[plaintiffs] saw."  Not so here where the allegations involve material omissions.  HMA's citation to

this Court's decision in *Mullaney v. Delta Air Lines, Inc.*, 258 F.R.D. 274 (S.D.N.Y. 2009) as authority

for its challenge to typicality and common questions under Rule 23(a) is puzzling.  There, the Court

found defendant conceded common issues of law and fact existed.  *Id.* at 277.  Instead, the fact that

"plaintiff claim[ed] that he relied on representations made to him by representatives of Air France,"

would not necessarily destroy common questions or typicality but created issues as to predominance

under Rule 23(b).  Thus, the case does not support the Defendant's challenge to the 23(a) factors.[6]

   **B**. **The PUTPCPL Class Claim Should Proceed.**

   Defendant's entire analysis of Ms. McCormick's PUTPCPL claim is flawed for one simple

reason:  Her post-purchase claim, which was affirmed by Judge Griesa on Defendant's motion to

dismiss, was the result of brake replacement work done *in Pennsylvania* and for which she paid in

Pennsylvania, not New Jersey.  Her testimony is clear that the initial brakes were replaced by

Defendant's dealer, McCafferty of Langhorne, in Pennsylvania at 62,322 miles.  *See* Exh. 35, at (i)

page 4 of HMA's "Vehicle History Report" indicating that multiple calipers were replaced; *see also*

Invoice from McCafferty at Exh. 35., bates stamped Miller/McCormick Prod_000328.  Thus,

---

[6] *Butler v. Porche Cars N.A., Inc.*, 2017 WL 1398316 (N.D.Ca. April 19, 2017) is also factually and
legally distinguishable. The claims were brought under California's CLRA and UCL which require
reliance, not a factor under §349.  In addition, the alleged defect there was not the result of one
alleged cause as it is here, to wit, corrosion.  Moreover, the wiring harness issue had already been
fixed in portions of the class vehicles.

McCormick meets the typicality requirements for asserting claims under Pennsylvania's consumer statute on behalf of owners of class vehicles in Pennsylvania who paid for repairs to Covered Brake Parts.  The law to be applied to those claims would be the same for all class members who had their repairs done in Pennsylvania, contrary to Defendant's argument.

### C.   Commonality and Typicality Are Satisfied For the Warranty Claim

As Plaintiff argued in its opening brief (5-6), and HMA does not dispute, Judge Karas affirmed the Breach of Warranty claims and allowed them to proceed for Marshall and White. *See Marshall v. Hyundai Motor America, Inc.,* 51 F.Supp.3d 451, 467 (S.D.N.Y. 2014).  This is the law of the case.  Judge Griesa emphasized this point in his Clarification Opinion, rendered *sua sponte*, noting that his determination on the *Miller* claims did not affect the claims in the *Marshall* case.  *See*, Exh. 8. Defendant's sole claimed challenge to this is that it "plans" to move for summary judgment (Defs. Br. 15).  HMA thereby concedes that the claim must go forward if its yet-to-be filed, contemplated motion for summary judgment ultimately is unsuccessful.

### II.      Plaintiffs Have Demonstrated that Common Issues Will Predominate

Rule 23(b)(3) predominance requires common issues "predominate over any questions affecting only individual members." The "mere existence of individual issues will not be sufficient to defeat certification. Rather, the balance must tip such that these individual issues predominate." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 87 (2d Cir. 2015).

Here, predominance is met for the class because the "central questions in the litigation are the same for all class members," including whether the vehicles "suffered from an inherent defect when they left the factory, [and] whether and when the defendant knew about the defect …." *Pella Corp. v. Saltzman,* 606 F.3d 391, 394 (7th Cir. 2013); *Daffin v. Ford Motor Co.,* 458 F.3d 549, 553-54 (6th Cir. 2006).  HMA's protests that certification would require examination of individual class members' driving habits and vehicles misses the mark because under Plaintiff's theory "it matters not how class members used their

vehicle or at what point the [brakes] needed replacement, as the [brakes] would always wear faster with the alleged defect than without." *Daniel v. Ford Motor Co.*, 2016 U.S. Dist. LEXIS 130745, at * 10 (E.D. Cal. Sep. 23, 2016). Merits adjudication will revolve around common evidence about the defect, making it ideal for a class action. Indeed, "[c]ourts have repeatedly held that § 349 claims based on omissions, non-disclosures and deceptive corporate policy are well suited for class certification." *Jermyn v. Best Buy Stores, L.P.*, 256 F.R.D. 418, 435 (S.D.N.Y. 2009); *see also Mazzanti v. Gen. Elec. Co.*, No. 13-1799, 2017 U.S. Dist. LEXIS 32903, at *15 (D. Conn. Mar. 7, 2017) (certifying class when defendant concealed a safety defect).

What matters most for class certification here is that Plaintiffs can (1) identify a common materials defect and (2) show that the class vehicles were commonly manufactured with the same materials relevant to the defect. Plaintiffs have met the first prong by identifying the common materials defect as the use of materials on rear brakes that were inadequate for New York and Pennsylvania, and inevitably, progressively and prematurely corrode from ordinary foreseeable use, culminating in seizure, vibration and judder as amply demonstrated by documents in HMA's possession.[7] Plaintiffs met the second prong by presenting evidence that all the class vehicles' brakes were made of the same materials.[8]

HMA presented no evidence to chink Plaintiff's armor on either issue. As to the first, mountains of evidence advanced by Plaintiff's experts demonstrate that the use of an inappropriate materials in the brake assemblies leads to inevitable, progressive and premature corrosion under foreseeable use.[9] This evidence rebuts HMA's argument that Plaintiff did not "reliably identify a common defect." Def. Br., at 21. The inferior materials, and resulting corrosion, cause rear brakes to seize and become inoperative, leading to failure of the rear braking system, antilock braking system and electronic stability control system. To HMA's dismay, Plaintiff's expert evidence is *corroborated by the conclusions of its own internal*

---

[7] *See* Plaintiff's Opening Brief (Dkt # 84) at pp. 17 - 20, and *supra* at pp. 2–3.
[8] *See* Plaintiff's Opening Brief at p. 20.
[9] *See* Plaintiff's Opening Brief at 15–18, and *supra* at pp. 2 – 3.

*investigation from its affiliate,* ███████████████████████████████████. *See generally*

HATCI Report. ██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████. *See*

Def. Br., at 26.[10] This evidence is distinguishable from the facts from *Oscar v. BMW of N. Am.*, 274

F.R.D. 498 (S.D.N.Y. 2011), which HMA cites repeatedly. There, the plaintiff was "unable to identify a

common defect" and had "not provided the court with *any evidence* that Goodyear RFTs are likely to fail

because of a particular defect." *Id.*, at 510 (emphasis added). Here, by contrast, there is extensive expert

testimony and other evidence of a common materials defect – the use of use of inadequate materials and

coatings – that makes the rear brakes uniformly susceptible to premature failure.

HMA's contention that, contrary to Plaintiff's expert opinions and the HATCI report, the brakes

were not defective at all and, in fact, made from "state of the art materials," Def. Br., at 44, also falls

short. This argument is precisely the type of common merits issue that should be uniformly tried in a

class trial. The Supreme Court has instructed that such contention "is properly addressed at trial or in a

ruling on a summary-judgment motion. The allegation should not be resolved in deciding whether to

certify a proposed class." *Id.*; *In re Deepwater Horizon*, 739 F.3d 790, 811 (5th Cir. 2014) ("[T]he parties may

potentially need to provide evidence to demonstrate that a particular contention is common, but not that

it is correct."). Thus, even assuming that HMA's materials are "state of the art", this is "an argument not

for refusing to certify the class but for certifying it and then entering a judgment that would largely

exonerate [Defendant] – a course it should welcome, as all class members who did not opt out of the

---

[10] Equally unavailing is Defendant's argument that this report, and other harmful admissions from its
production, should not be considered because they are allegedly inadmissible. *See, e.g.,* Def. Br., at 41.
Contrary to Defendant's argument, the Court should consider all evidence at class certification. *See Flores
v. Anjost Corp.,* 284 F.R.D. 112, 124, n. 3 (S.D.N.Y. 2012) (collecting authority and finding that "most
district courts addressing this question have held that evidence need not be admissible under the Federal
Rules of Evidence—or that the rules should not be applied strictly—on a motion for class
certification.").

class action would be bound by the judgment." *Butler v. Sears Roebuck and Co.*, 727 F.3d 796, 799 (7th Cir. 2013).

As to the second – whether the class vehicles were all made with the same materials – HMA has all but conceded the point. Its witnesses have testified that the materials used to manufacture the brakes did not change during the class period.[11] Notably, that this case concerns certain limited brake parts on a vehicle of a single make and model with identical relevant materials, distinguishes it from many of the product defect cases cited by HMA in which the court denied certification. *See, e.g., Kaczmarek v. IBM*, 186 F.R.D. 307, 312 (S.D.N.Y. 1999) ("Plaintiffs here purchased 115 different models of IBM computers with six different Mwave chips placed on seven different Mwave cards."); *Sanneman v. Chrysler Corp.*, 191 F.R.D. 441, 450 (E.D. Pa. 2000) (class consisting of "hundreds of makes and models, with hundreds of different kinds and colors of paint").

Here, the class should be certified because "[t]he claims of all prospective class members involve the same alleged defect, [allegedly] covered by the same warranty, and found in [all] vehicles of the same make and model." *Edwards v. Ford Motor Company*, 603 Fed. Appx. 538, 540 (9th Cir. 2015). At trial, the factfinder will determine whether the brakes were made of defective materials. If so, Plaintiff has proven the defining element of the Class's claims, clearing the way for resolution of common issues to determine liability. HMA's expert Walker agreed. *See* Walker Dep. at pp. 173:2-18; 175:2-18.

For much of its brief, HMA scrutinizes each element of Plaintiff's claim with a microscopic (though faulty) lens, losing sight that a "plaintiff class need not prove that each element of a claim can be established by classwide proof: 'What the rule does require is that common questions *predominate* over any questions affecting only individual [class] members.'" *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d, at 858 (quoting *Amgen*, 133 S.Ct., at 1196) (other citations omitted) (emphasis in *Amgen*). Common issues plainly predominate for Plaintiffs' consumer protection and warranty claims.

---

[11] *See* Plaintiffs' Opening Brief at p. 20.

1.  **Under Plaintiff's Theory, Common Evidence Will Suffice for Each Member to Make a *Prima Facie* Showing of Liability, and Will Drive Resolution of the Suit**

Under Supreme Court precedent, a "common question is one where the same evidence will suffice for each member to make a *prima facie* showing or the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc.*, 136 S. Ct., at 1045.  Here, the evidence to establish the *prima facie* consumer protection and warranty claims is common to the classes. There are only three elements for the § 349 claim: (1) consumer-oriented conduct, (2) that was deceptive and material, (3) that caused injury. [12] Defendant concedes the first. That leaves the second and third, for which the Class will rely on common evidence.[13] For their warranty claims, Plaintiffs need only allege the existence of a warranty, its breach, and injury. Defendant concedes the existence of a common warranty for the class. That, too leaves, the second and third, for which the Classes will rely on common evidence.

   a.  **Common evidence will establish Defendant's deceptive omission and its materiality to consumers**

Plaintiff has amassed a robust record that Defendant knew of the defect's prevalence, but opted to cover it up, rather than disclose it to consumers. Plaintiff's opening brief detailed this common evidence at length, which includes, for example ███████████████████. *See* Pl. Br. at 17 - 20.

The court in *Haag* recognized that similar allegations and evidence raised common issues as to the deceptive omission and its materiality that predominated over individualized issues:

> On balance, I find that plaintiff has shown, by a preponderance of the evidence, that the existence (or lack thereof) of a defect in the Class Vehicle, the defendant's course of conduct with respect to disclosing the alleged defect (or not) to consumers, and the materiality of its alleged omissions, are issues for which common questions can, on the present record, be expected to predominate over individual ones.

*Haag v. Hyundai Motor Am.,* supra at *3.   Defendant presents virtually no argument to challenge the propriety of this finding. Hence, common issues predominate for at least two out of the three elements

---

[12] The claim under the UTPCPL has similar elements.

[13] Although Plaintiff demonstrates that each element is subject to common proof, such a showing is not necessary. *See Amgen*, 133 S.Ct. at 1196 (the "plaintiff class need not prove that each element of a claim can be established by classwide proof ….").

for the consumer protection claims.

This has significance for the warranty claims, too. HMA engaged in a common course of conduct: it manufactured and sold Class Vehicles with a common materials defect that it concealed from consumers and, then, refused to inform consumers and its dealers of the defect, prompting improper denials of coverage under common warranties. The legal import of HMA's common conduct will predominate.

### b.  Common evidence will establish that the class suffered common injuries

#### i.      The New York Class may recover readily calculable statutory damages

Plaintiffs have provided strong evidence that they and other purchasers have been injured by Defendant's material omissions in three ways: (1) deprivation of a consumer's right to be free from 'false, deceptive, or misleading' practices"[14]; (2) exposure to an unreasonable risk of harm that, standing alone, constitutes a concrete injury,[15] and that also caused damages in the form of payments by Plaintiffs and class members to pay for brake-related treatments, repairs, and replacements; and (3) paying more for the vehicles than they otherwise would have had they known of the defect.   For the New York class, statutory damages are available for these injuries and are readily calculable on a class-wide basis. *Sykes*, 780 F.3d at 87 ("It is not disputed that statutory damages under GBL § 349 can be assessed on the basis of common proof, as they are capped at $50."); *Famular v. Whirlpool Corp.*, No. 16 CV 944 (VB), 2019 U.S. Dist. LEXIS 44907, at *26 (S.D.N.Y. Mar. 18, 2019) (statutory damages are a suitable damages methodology in product misrepresentation suit); *Kurtz v. Kimberly-Clark Corp.*, 321

---

[14] *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 81 (2d Cir. 2018). In *Cohen*, the Court made this statement in connection with a claim arising under the Fair Debt Collection Practices Act, but the logic of the decision applies with equal force here, as elaborated below.

[15] *See Baur v. Veneman*, 352 F.3d 625, 633 (2d Cir. 2003) ("[A]n unreasonable exposure to risk may itself cause cognizable injury."); *Adkins v. Morgan Stanley*, No. 12 CV 7667 (HB), 2013 U.S. Dist. LEXIS 104369, at *10 (S.D.N.Y. July 25, 2013) (finding mere exposure to "high-risk loans as opposed to better loans or even no loan at all caused Plaintiffs a concrete injury."). Statutory damages are a particularly suitable remedy for Defendant exposing the Class to an unreasonable risk of harm because that injury is otherwise difficult to quantify. *Chanel, Inc. v. Gardner*, 2010 U.S. Dist. LEXIS 140233, at *13 (S.D.N.Y. Apr. 6, 2010) (statutory damages appropriate remedy in such situations).

F.R.D. 482, 551 (E.D.N.Y. 2017) (distinguishing *Oscar* and finding that "[o]nce an injury is established, statutory damages can be precisely calculated for each class member."). At minimum, then, statutory damages provide a baseline set of damages for Plaintiffs and the New York Class.

Defendant takes issue with this approach, arguing that a § 349 claim is infirm when a plaintiff alleges he or she is a victim of deception but does not independently demonstrate damages. *See* Def. Br. at 18-19. This view, however, has routinely been rejected by multiple courts, including by Your Honor. "Defendant fails to appreciate that *by deceiving the public alone* it would have committed a legal wrong against anyone who can prove that he was injured thereby." *Jermyn v. Best Buy Stores, L.P.*, 276 F.R.D. 167, 172-73 (S.D.N.Y. 2011) (emphasis added) ("Defendant's arguments on this motion persistently conflate the issues of liability, or legal injury, and damages."). Indeed, the Second Circuit has established that when a statute creates a right "to be free from 'false, deceptive, or misleading' practices," it is the deprivation of that right alone through such a practice by a defendant that constitutes an injury, not damages that flow from such a deprivation. *Cohen*, 897 F.3d at 81. In *Cohen*, the court found that a plaintiff had alleged injury-in-fact for purposes of the Fair Debt Collection Practices Act, where "misrepresentation might have deprived Cohen of information relevant to the debt prompting the foreclosure proceeding, posing a 'risk of real harm' insofar as it could hinder the exercise of his right to defend or otherwise litigate that action." *Id.* at 81-82. Here, § 349 similarly prohibits deceptive practices to consumers, which HMA violated by failing to disclose the defective Covered Brake Parts prone to seizing as well as its deceptive denial of valid warranty claims, depriving the Class of information to protect itself from a real risk of harm. *See also Jermyn*, 256 F.R.D. at 435-36 ("[T]he injury alleged is identical in each instance: non-disclosure of Best Buy's Anti-Price Matching Policy."). Notably, the language that New York courts have long used in evaluating injury for purposes of statutory damages under § 349 comports with Plaintiffs' approach and conflicts with Defendant's. *See, e.g., McDonald v. North Shore Yacht Sales, Inc.*, 134 Misc. 2d 910, 914, 916 (Sup. Ct. Nassau 1987) (defining an "*injured*"

person under the § 349 as "one who was misled or deceived," holding that "[t]he dollar amount of injury involved in such a claim is not relevant"); *Geismar v. Strauss*, 109 Misc. 2d 495, 499 (Dist. Ct. Suffolk Cty. 1981) (finding a plaintiff need not prove "actual damages" to prove she is a person "injured" under the § 349).

Even assuming, for the sake of argument, that the material omission of information about the defect post-sale does not constitute an actionable injury giving rise to classwide statutory damages, Plaintiffs' allegations and evidence about price premium does. When "the loss of value resulting from a non-functional component is straightforward," plaintiffs can maintain class certification even in the absence of expert testimony on a price premium because, in such circumstances, "[s]urely a lay jury is competent, without expert assistance, to conclude that the consumer has been bilked." *In re AMLA Litig.*, 328 F.R.D. 127, 138 (S.D.N.Y. 2018). This is such a case. It is obvious that reasonable consumers would want to know that their brakes will progressively degrade and fail as a result of a defect and that the market price for vehicles with a known defect would be less when such a defect is disclosed. For purposes of certification, "[t]he fact that consumers paid varying prices for the product does not alter this analysis, as a jury could reasonably conclude that no matter what the consumer paid, the price would have been lower still but for the deceptive [omission]. Importantly, because NYGBL § 349 permits statutory damages, it does not matter <u>how much</u> the alleged misrepresentations increased the purchase price, so long as the price paid was higher than it otherwise would have been." *See id.* Defendant's cases about injury and statutory damages are inapposite because here Plaintiffs have alleged "a form of the classic 'price premium' theory of injury that New York … courts have repeatedly held to be valid." *See Irvine v. Kate Spade & Co.*, No. 16-CV-7300 (JMF), 2017 U.S. Dist. LEXIS 164165, at *14-15 (S.D.N.Y. Sep. 28, 2017).

Plaintiffs acknowledge that, in *Haag*, the court declined to grant certification solely because of its perceived absence of common damages. However, the court there did *not* consider the issue of statutory

damages because it found that there was a lack of CAFA jurisdiction given the limited universe of vehicles at-issue.  *See Haag, supra*, 2019 WL 1029002 at *4, n.5.

Defendant also insinuates that Plaintiffs must present evidence that each class member suffered injury.  *See* Def. Br. at 16-17. As a preliminary matter, Plaintiffs submit that they have done so by demonstrating that HMA engaged in a common course of conduct that failed to disclose a safety defect to Plaintiffs and the class. However, the Second Circuit has said: "[w]e do not require that each member . . . submit evidence of personal standing." *Denney v. Deutsche Bank AG,* 443 F.3d 253, 263 (2d. Cir. 2006). Indeed, "passive members need not make any individual showing of standing, because the standing issue focuses on whether the plaintiff is properly before the court, not whether … class members are properly before the court." *Id.* at 264 (internal quotations omitted); *see also In re Elec. Books Antitrust Litig.,* No. 12-3394, 2014 U.S. Dist. LEXIS 57473, at * 24-27 (S.D.N.Y. Apr. 24, 2014).

The fact that each class member may not have had the claimed damage manifest, is not a basis to defeat class certification where there is clearly a significant number of class members who did bring their vehicles to HMA for the repair under warranty but instead, were charged for the repair by Defendant.  *Daffin v. Ford Motor Co.*, 458 F.3d 549, 553-554 (6th Cir. 2006) (whether class members could prove a breach of warranty if they did not have the accelerator sticking problem was a merits question and akin to the question of "whether Ford's express warranty promises to cover the alleged defect …even if no sticking occurs during the warranty period"); *Wolin v. Jaguar Land Rover N.A., LLC*, 617 F.3d 1168, 1174 (9th Cir. 2010) (district court "erred when it required [plaintiffs] to show that a majority of proposed class members' vehicles manifested the results of the defect.").  In addition, a diminution of value analysis at the merits stage would apply to all class members.

In addition, the Second Circuit has instructed that this Court has "a number of management tools available . . . to address any individualized damages issues that might arise in a class action,"

17

including, "appointing a magistrate judge or special master to preside over individual damages

proceedings," "creating subclasses," or altering or amending the class. *In re Visa Check*, 280 F.3d 124, 141

(2d Cir. 2001). And, most importantly, the Second Circuit has stated that class certification can be proper

even when "damages are not capable of measurement on a classwide basis." *Roach v. T.L. Cannon Corp.*,

778 F.3d 401, 409 (2d Cir. 2015).

### ii. The Classes may recover price inflation and/or cost of repair damages

At this stage, Plaintiffs need only disclose a suitable methodology for measuring the price premium

injury on a class-wide basis. *In re Scotts EZ Seed Litig.*, 304 F.R.D396, 410 n.7 (S.D.N.Y. 2015). Conjoint

analysis, which Plaintiff's proposed economic expert Steven Gaskin proposes to use at the merits stage

to measure classwide damages for the consumer protection claims for the New York and Pennsylvania

classes, has "previously been approved in consumer class actions as [a] reliable methodolog[y] available

for calculating the price premium attributable to a product characteristic." *Kurtz*, 2017 U.S. Dist. LEXIS

44576, at *164-65 (collecting authority).  Notably, Mr. Gaskin disclosed a nearly identical methodology at

the class certification stage in another omission-based auto defect case, which involved exhaust entering

the cabin of Ford Explorers. *See Sanchez-Knutson v. Ford Motor Co.*, 310 F.R.D. 529 (S.D. Fla. 2015).

There, the Court certified the class and accepted Mr. Gaskin's "proposed conjoint analysis damages

model for purposes of class certification," *Sanchez-Knutson*, 310 F.R.D. at 539.[16] After certification, Mr.

Gaskin completed the conjoint analysis, and the Court found Mr. Gaskin's evidence admissible for trial.

*Sanchez-Knutson v. Ford Motor Co.*, 181 F. Supp. 3d 988, 996 (S.D. Fla. 2016). Here, merits discovery has

not occurred.  Mr. Gaskin can complete his conjoint analysis and assess the diminution in value across

---

[16] Importantly, the Second and Eleventh Circuits apply *Comcast* in an identical manner. *See, e.g.,*
*Carriuolo v. GM Co.*, 823 F.3d 977, 988 (11th Cir. 2016) (*Comcast* "simply requires that any model
supporting a plaintiff's damages case must be consistent with its liability case," citing *Roach* among
authorities).

the class from the defect, just like in *Sanchez-Knutson*.[17]  Plaintiffs understand that Defendant will register

objections to Mr. Gaskin's conjoint analysis in the merits phase of this case, as Ford did in *Sanchez-Knutson*, but also have no doubt that such objections will apply commonly across the class.  *See Tyson Foods, Inc.*, 136 S. Ct. at 1047 (defense that study was "unrepresentative or inaccurate" was "itself common to the claims made by all class members"); *Khoday v. Symantec Corp.*, No. 11-180, 2014 U.S. Dist. LEXIS 43315, at *105 - *108 (D. Minn. Mar. 31, 2014) (finding Mr. Gaskin's methodology capable of measuring damages on a classwide basis).  Notably, HMA recognizes that Plaintiffs herein "assert injuries based on allegedly inflated price."  Def. Br. 45.  Also, Plaintiffs' Amended Complaint in *Miller* asserted diminution of value damages at ¶¶ 131 and 203.  In their Interrogatory Responses, Miller, Liddle and McCormick assert diminution of value as class damages at No.'s 13 & 14.  See, GSG Reply Decl. at **Exhs. 4, 5,** and **6**.  Thus, HMA has been on notice throughout this litigation of Plaintiffs' claim to diminution of value.

Another class-wide measure of damages is based on replacement costs. Because all class members had defective brakes destined to prematurely fail, class members who paid out-of-pocket are entitled to receive the cost of replacement. These costs may be applied on a class-wide basis as a measure of damages.  HMA misses the mark when it argues that this measure is inappropriate because it believes comparatively few class members have had the problem. *See* Def. Br. at 19-20.  Plaintiffs have credibly alleged, with evidence, that *all* Class Members have vehicles with the common brake defect, e.g., brake caliper, slider, clips and rotors lacking sufficient corrosion protection) with a common consequence (inevitable brake seizing from corrosion). As Dr. Lynch testified, the HATCI Report supported his conclusion that all vehicles were subject to a common defect.  Deposition of Richard Lynch at 239:10 -

---

[17] Many other courts have accepted conjoint analysis as an acceptable method at class certification.  *See Kurtz*, 2017 U.S. Dist. LEXIS 44576, at *164-65 (collecting authority); *Guido v. L'Oreal, USA, Inc.*, No. 2:11-cv-01067, 2014 U.S. Dist. LEXIS 165777, at *19 (C.D. Cal. July 24, 2014) (collecting authority); *In re Dial Complete Mktg. & Sales Practices Litig.*, 320 F.R.D. 326, 337 (D.N.H. Mar. 27, 2017) (accepting conjoint analysis to assess classwide damages).

240:3, **Exh. 15** to the Graifman Decl. This distinguishes the facts here from those in Defendant's cases. For example, *In re Canon Cameras*, 237 F.R.D. 357 (S.D.N.Y. 2006) is "distinguishable because, in that case, the plaintiffs could only show that there was a malfunction in a 'tiny fraction' of the cameras and it was undisputed that a variety of factors for which the manufacturer would not be liable could have caused the malfunction. Here, the defect may not be noticed [at first] by many car owners, and Plaintiff has since presented expert evidence that the defect is likely to have occurred in a large number of [vehicles]." *Rosen v. J.M. Auto Inc.*, 270 F.R.D. 675, 686 (S.D. Fla. 2009) (citing *In re Canon Cameras*, 237 F.R.D. at 359).[18]

As to the GBL § 349 claim's repair-and-replace costs, HMA concedes that there are a number of individuals – like the Named Plaintiffs – who made warranty claims for brake-related problems consistent with the defect here, but whose claims were denied. If, at the merits phase, the jury finds HMA liable for breach of warranty by failing to pay class members' warranty claims, then, at the damages phase, class members will be allowed to seek reimbursement for their out-of-pocket expenses in connection with such improper warranty claim denials.[19]

## 2.   Defendant's "Individualized Defenses" are Common Issues with Common Proof

Defendant at pp. 21 *et seq.*, continues to argue the merits of its defenses as if it were already at trial.   However, class certification is not akin to trial on the merits. There is "no use in a class certification order that is required to list all possible defenses to all possible damages claims, nor do we see, in the text of Rule 23, any requirement for it." *Sykes*, 780 F.3d at 95. Nevertheless, Plaintiff will demonstrate how Defendant's purported individualized defenses largely present common issues. To the extent any individualized issues linger, they pale in significance to the common issues, and pose no barrier to class

---

[18] *See also Belfiore*, 311 F.R.D., at 63 (distinguishing *Canon* because the injury was the price premium on every product sold, not the purchase of some defective products sold among many without defect).

[19] *See* HMA Warranty Excerpts Attached as **Exh. 24** to the Graifman Decl. (warranty language stating that it only has to be *a* cause, not *the* cause to trigger coverage)

certification.

### a.   Under Plaintiff's theory, Causation is a Common Issue

HMA's brief supplies a granular academic discussion of New York snowfall, salt treatments and driving behavior, but the propriety of class certification does not turn on such sophistry. Under Rule 23, Plaintiffs simply have to show that, on balance, the common issues outweigh the individual ones. This is plainly the case with respect to the issue of causation.

HMA itself knows that the owners and lessees of vehicles with corrosion-related defects in Salt Belt states like New York and Pennsylvania should be treated commonly because it has successfully done so in voluntary recalls and settlements. In those instances, HMA recognized the reliability of a uniform approach for vehicles across the Salt Belt, eschewing the notion advanced in its brief that modest purported variances in exposure to salt in certain areas (*e.g.* Syracuse and Long Island) within the Salt Belt matters. Indeed, HMA extolled the National Highway Traffic Safety Administration's "expertise and experience in this highly technical field" in recognizing that "vehicles operated in the Salt Belt States [including New York and Pennsylvania] can experience corrosion from long-term exposure to road salt that is used to treat roads covered in snow and ice" and tailoring recalls to such regions accordingly since the 1980s. *See* Mem. of Points and Auth. in Support of Joint Motion for Approval of Class Settlement in *Cirulli v. Hyundai, et al.*, Doc. 116-1 (Mar. 22, 2011), at p. 17.[20] That settlement expanded upon a recall initiated by HMA for earlier model year Santa Fes in which progressive corrosion culminated in the loss of structural rigidity in the trailing arms of its vehicles. *See* Defect Information Report, April 14, 2009.[21] In its "Defect Information Report" initiating the recall, HMA also acknowledged the uniform need for a recall where a part prematurely corroded due to the unitary nature of "large quantities of salt [that] are used to de-ice roads in the affected states," leading to progressive corrosion "as a result of exposure to heavy concentrations of road salt for extended periods . . . ." *Id.*

---

[20] Attached as **Exh. 8** to Graifman Reply Decl.
[21] Attached as **Exh. 9** to Graifman Reply Decl.

For Plaintiff's GBL § 349 claim, HMA also neglects to mention that causation is presumed across the class since "[j]ustifiable reliance by the plaintiff is not an element of the statutory claim." *Claridge v. N. Am. Power & Gas, LLC*, Case No. 15-1261, 2016 U.S. Dist. LEXIS 165229, at *14-19 (S.D.N.Y. Nov. 30, 2016) (quoting *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941, 967 N.E.2d 675, 944 N.Y.S.2d 452 (2012). *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 596 (C.D. Cal. 2008) (finding under California law – which is comparable to New York law – that when "materiality is shown, reliance and causation may be presumed as to the entire class" and "[m]ateriality is determined from the perspective of the reasonable consumer" under California law). In *Parkinson*, the court found class certification appropriate for consumer protection claims because HMA uniformly failed to disclose facts about the alleged defect that a reasonable consumer may find material. Here, HMA did the same, and class certification is likewise appropriate.

### b. Variation in Driving Habits Do Not Preclude Predominance

HMA devotes over three pages of its brief to arguing that driving habits affect brake wear, and that "warranty cases are unsuited for class certification." Def. Br at 28 – 31. Again, HMA misses the mark. Differences in driving and maintenance habits are not material to the Court's class certification analysis because putative class members are injured *regardless* of any differences in driving habits or maintenance. Whether owners engage in "stop-and-go driving or repeatedly engage in hard braking", *see* Def. Br., at 19, does not alter the fact that the brakes corrode and seize prematurely from the materials defect. Plaintiff submits that the prematurity of the failure from the ubiquitous materials defect is still a common issue, the resolution of which substantially advances the litigation. *See Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 479 (C.D. Cal. 2012) (misuse defense cannot defeat class certification).

### 3. HMA's Policies and Procedures Strictly Govern Warranty Coverage and Interpretation

For the breach of warranty claim, HMA is wrong to argue that causation is individualized or that warranty coverage allegedly involves a decentralized process. *See* Def's Br., at 32-34. This argument has no basis in fact because HMA controls the coverage of warranty claims through common corporate directives, ███████████████████████████████████████████████████████████, employs safeguards to ensure that the warranty coverage process does not devolve into a non-uniform decision-making process, and remains the ultimate arbiter of warranty claims. *See supra* at 5-6. Plaintiffs argues that HMA applies its Warranty in a common manner as evidenced above. And courts in this Circuit have repeatedly held that "claims arising out of form contracts are particularly appropriate for class certification" since the contracts "can have only one meaning" that does not "depend on … individual expectations." *In re Cablevision Consumer Litig.*, No. 10-CV-4992(JS)(AKT), 2014 U.S. Dist. LEXIS 44983, at *17, 20 (E.D.N.Y. Mar. 31, 2014). The cases that HMA relies upon are not to the contrary. In *Taylor v. Zucker*, 2015 U.S. Dist. LEXIS 98877, at *32 (S.D.N.Y. July 27, 2015), unlike here, the proposed class members were evaluated by numerous medical personnel, working under multiple supervisors, in 68 different decision-making agencies spread across New York state. *Id.* at 32. Each of the agencies had "its own procedures for making [ ]decisions . . ." and ; class members were they were notified of their care reduction under a "fragmented system in which each [managed care organization] had its own form of notice." *Id.* at 33. By contrast, it is **HMA who warranted the Class Vehicles** and component parts to class members, ***not*** the dealers. *See supra* at 5-6.

The fact that HMA may have paid out some warranty claims related to the components at issue here is of no moment. Nor is the fact that other manufacturers may have a shorter warranty for certain brake components. HMA casts Plaintiffs' request for class-wide reimbursements of defect-related brake servicing that should have been covered by the warranty as requiring logistically impossible file-by-file reviews. *See* Def. Br., at 34-35. This argument is belied by HMA's previous, successful reimbursement programs for Salt Belt recalls and settlements. For example, in the "trailing arms" Salt Belt corrosion

recall, HMA set forth to NHTSA a system for reimbursements, repairs and replacements. *See* Pre-notification Recall Remedy Reimbursement Plan.[22]  This model was successfully expanded in the class action settlement about the same corrosion defect.  HMA's success in implementing a common approach for reimbursing those who spent out-of-pocket for defect-related repairs and services in the past suggests that, in the litigation context, there is a common approach for reimbursing those who spent out-of-pocket for defect-related repairs now.

### 4.   Plaintiffs Easily Demonstrate Common Class-Wide Defects

Defendant can only make the argument that classwide defects have not been shown by ignoring the scathing plethora of evidence which comes from its own production and which demonstrates that HMA investigated, analyzed, tested and catalogued the premature corrosion of the Covered Brake Parts.  Judge Larimar in *Haag, supra*, recognized this to be a common question which predominated as to liability, stating: "I find that plaintiff has shown, by a preponderance of the evidence, that the existence (or lack thereof) of a defect in the Class Vehicles, the defendant's course of conduct with respect to disclosing the alleged defect (or not) to consumers, and the materiality of its alleged omissions are issues for which common questions can, on the present record, be expected to predominate over individual ones." *Haag, supra*, at *3.

One need only look at Plaintiffs' Exhibits 1 (Mando Salt Spray Tests), 2 (Early HATCI Report), 3 (QIR), 4 (HATCI Report), 5 (QIR), 15 (the ███ NY Warranty claims), 16 (the ███ Pa Warranty claims), 19 (████████████████████), 20 (QIR), 21 (FSE), 22 (FSE), 23(FSE) and 25 (Intertek Report on sticking caliper defect) to see the presence of overwhelming evidence as to premature corrosion of the brake sliders, clips, rotors and calipers, to wit, the Covered Brake Parts.  While Defendant spends pages futilely attacking Plaintiffs' experts, those experts relied on Defendant's *own documents and findings* as they were allowed to.  Notably, Defendant does not attack

---

[22] Attached as **Exh. 10** to the Graifman Reply Decl.

Plaintiffs' expert's qualifications, nor could it.  While HMA tries to claim there is no unifying defect, it was clear to Judge Larimar as to liability that there was sufficient evidence in the record of a class-wide defect to find that common issues of liability based upon that evidence, predominated.  More significantly, it was clear to Hyundai's two engineering witnesses that the issue of premature corrosion causing vibration materially affects the driver's experience and raises concerns of safety when brakes do not perform as intended.  See Excerpt of Kim Dep., at GSG Reply Decl., **Exh. "7."**  Plaintiffs' experts were clear that the defect is based on Hyundai's improper materials selection which cause premature corrosion (See Lynch Report, Exh. 6).  Defendant's carping as to Dr. Lynch and Mr. McLellan amount to nothing more than challenges which go solely to the weight of the evidence, the type of "'quibble' over an expert's experience, academic training, and other alleged shortcomings" that the Second Circuit has held "go to the weight and credibility of an expert's testimony instead of the admissibility of his opinions." *Millman v. Mitsubishi Caterpilllar Forklift Am., Inc.,* 594 F.Supp.2d 230, 237 (N.D.N.Y.  2009) (quoting *McCullock v. H.B. Fuller Co.,* 61 F.3d 1038, 1043 (2d Cir. 1995)).

Defendants other challenges at pp. 38-43 are nothing more than attempts at trying the merits of the case before the Court on this motion for class certification and constitute exactly the type of challenge that this Court and others have admonished defendants for.  *DeMarco v. Nat'l Collector's Mint, Inc.*, 229 F.R.D. 73, 81 (S.D.N.Y. 2005); *Weiss v. La Suisse, Societe D'Assurances Sur Le Vie*, 226 F.R.D. 446, 447 (S.D.N.Y. 2005); *Wolin v. Jaguar Land Rover N.A., LLC*, 617 F.3d 1168, 1173 (9th Cir. 2010) ("proof of the manifestation of a defect is not a prerequisite to class certification").

In *In re Arris Cable Modem Consumer Litigation Class Action*, 2018 WL 3820619 (N.D. Ca. Aug. 10, 2018), a consumer fraud class action was certified. The Court, in analyzing the Rule 23(b)(3) predominance requirement, noted that "[i]n order to satisfy the predominance requirement, the plaintiff need not prove the existence of the defect" citing to *Edwards*, 603 F. App'x at 540 and

*Amgen*, 568 U.S. at 459. *Id.* at *18. The Court further noted that "Plaintiffs' position [on the existence of defects] may or may not prevail, but that is a merits questions not appropriately addressed at the class certification stage." [brackets in original] (citing to *Just Film, Inc. v. Buono*, 847 F. 3d 1108, 1122 (9th Cir. 2017). *Arris* at *18. In sum, HMA's attempt to argue the merits of the claim, which permeates its Point II.A. subds. 4 and 5 must be rejected by this Court as failing to defeat the predominance of common questions.

### 5. HMA's Assertion That Proof of Presentation On The Warranty Claim Is Required Should Be Rejected And, In Any Event, Does Not Destroy Predominance

HMA's claimed defense of proof of presentation or opportunity to repair makes no sense. Since it is undisputed that each named Plaintiff herein brought their respective vehicles to HMA's dealer first to make the repair under warranty, Plaintiffs have given HMA the opportunity to cure the defect and Plaintiffs have thereby satisfied this requirement. Thus, it would be manifestly unfair to require each class member to have also done that, since Defendant was clearly on notice of the claims herein and the breach of warranty by virtue of the claims in the complaints in the *Marshall* and *Miller* actions which also gave HMA notice that Plaintiffs were asserting claims on behalf of a putative class.[23] If Defendant's argument were correct, a class could never be certified for an express breach of warranty claim because, according to Defendant, each class member must prove notice of presentation. Clearly that is not the case.

Nonetheless, even if required for class members, proof of presentation would be easily documented as a ministerial act in the claims process since most people brought their vehicle to the

---

[23] *Feliciano v Gen. Motors LLC*, 14 CIV. 06374 (AT), 2016 WL 9344120, at *4 (S.D.N.Y. Mar. 31, 2016) ("Plaintiffs, however, do allege that they gave written notice to GM…. The complaint states '[GM] was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and its Chevrolet Craze customers before or within a reasonable amount of time after the allegations of vehicle defects became public.' *Id.'*").

dealer first believing it would be covered and ended up paying for repair of Covered Brake Parts. Thus, they would have the invoice from the dealer.

Defendant's cases (Def. Br. 44) are wholly distinguishable. *Broe v. Oneonta Sales*, 420 N.Y.S.2d 436 (Sup. Ct. 1978) and *Sinnerard*, were not class actions and involved individual plaintiffs who failed to provide notice, which is not the case herein. *Schmidt v. Ford Motor Co.*, 972 F.Supp.2d 712 (E.D.Pa. 2013) expressly distinguished itself from a case where the defect *was* common among class members, such as *Martin v. Ford Motor Co.,* 765 F.Supp.2d 673, 682–83 (E.D.Pa.2011), where the *Martin* putative class members' defect "was common enough that third-party notice would provide the manufacturer with a sufficient opportunity to cure the defect." *Id*; *see also, Samuel-Bassett v. Kia Motors America, Inc.*, 613 Pa. 371, 414 (2011)(finding that trial court properly certified class of Kia owners for breach of express warranty on defective brake claim, as the class would be able to prove notice and opportunity to cure through common evidence at trial). Clearly the facts of the within case mirrors the *Samuel-Bassett* and *Martin* decisions. The defect is common enough that HMA could have cured the defect. Instead, in the HACTI Report, discussed *supra*, ████

████████████████████████████████████

████████████████████████

### 6. Defendant's Affirmative Defense of Statute of Limitations Does Not Defeat Predominance and Is, In Any Event, a Merits Issue

Defendant makes the unproven claim that many class members may have had repairs done prior to three years from the date of the Complaint's filing in 2012. First, the burden of demonstrating the affirmative defense of statute of limitations is on Defendant not Plaintiffs. *Miller v. Hyundai Motor America*, 2016 WL 5476000 at *5 (S.D.N.Y. Sept. 28, 2016). Second, Plaintiffs' omission claim is uniformly a rebuttal to that theory. *See Tait,* 289 F.R.D. at 485-86 ("Plaintiffs' arguments to rebut Defendant's Statute of Limitations defense raise common questions of law and fact that are susceptible to common proof…. [which] includes Defendant's failure to inform

consumers of the design defect and continued offers to repair…"); *Cameron v. E.M. Adams & Co.*, 547 F.2d 473, 478 (9th Cir. 1976) (holding that "existence of a statute of limitations issue does not compel a finding that individual issues predominate over common ones").

Notably, Judge Griesa in *Miller, supra*, held that the post-purchase claims of the New York class plaintiffs, Miller and Liddle, survived the statute of limitations arguments of HMA. *Id.* at *7. Defendant's current recycling of that defense is purely a merits argument for trial and the issue is easily and uniformly handled at trial, especially as most car owners hold onto their invoices, or can access them through the dealer (or in the case of the hundreds of class members who complained to HMA's customer call center, HMA retains those records). If the jury finds a cut-off date for the class' §349 claim, that simply means that any class member whose invoice date for repair of a Covered Brake Part is earlier than that date, may not be able to participate in the damage award.[24] Defendant's claimed limitations defense does not defeat predominance of common issues.

Nor do potential individualized statute of limitations defenses preclude class certification. "[N]umerous courts have held that the presence of a statute of limitations defense to some of the class members' claims does not defeat certification." *See Duprey v. Connecticut DMV*, 191 F.R.D. 329, 340 (D. Conn. 2000) (collecting authority). Thus, "courts have been reluctant to deny class action status because affirmative defenses might be available against different class members as long as the defenses do not overshadow the primary claims." *N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*, 2014 U.S. Dist. LEXIS 35326, *22 (S.D.N.Y. Mar. 17, 2014) (citations omitted). Here, even assuming that individual

---

[24] As HMA well knows, this is hardly a novel concept as in every automobile defect case that is settled on a classwide basis, the claims process includes submission by the class member of proof of payment for repair of the defect to the claims administrator. The process is ministerial notwithstanding Defendant's attempt to elevate it to a complicated class issue. That attempt should be rejected by the Court. See *Little v. Kia Motors, supra,* 455 N.J. Super. at 432 (recognizing that individual damages issues might still exist with respect to the limited class, but those damages issues "could be addressed through a number of techniques, including claim forms, interrogatories, requests for admissions, and 'statistical interpretation of sampling data from the relevant universe, established based on competent data.'" (internal citation omitted)).

statute of limitations defenses exist, they do not overshadow that the that brakes were manufactured with defective materials which should have been disclosed.

## III.  Alternatively, a Rule 23(b)(2) Class Is Appropriate.

Again, HMA misconstrues the basis for the request, in arguing against certification of a Rule 23(b)(2) class. If the breach of warranty claim is sustained, then a (b)(2) class would be justiciable on the issue of whether the claims of class members for HMA to cover corroded Covered Brake Parts under the warranty should be enforced.  Similarly, with regard to GBL §349, HMA's policy of failing to pay for the replacement of corroded Covered Brake Parts, if found to be a violation of GBL §349 by the jury after trial, such policy should be enjoined, similar to this Court's certification of an injunction class (in addition to the (b)(3) class in *Jermyn,* 256 F.R.D. 418 to enjoin the interdicted illegal policy which violated §349.  Defendant's attempt to distinguish that holding is based on its misconstruing of the (b)(2) request herein.

## IV.  A Rule 23(c)(4) Issues Class Would, Alternatively, Also Advance the Litigation

Plaintiffs, alternatively, request that the Court consider a liability class pursuant to Fed. R. Civ. P. 23(c)(4).  The Second Circuit has held that "a court may employ Rule 23(c)(4)[] to certify a class on a particular issue even if the action as a whole does not satisfy Rule 23(b)(3)'s predominance requirement." *In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 225 (2d Cir. 2006).  Moreover, district courts within this judicial circuit have routinely held that this approach is viable. *See, e.g., Jacob v. Duane Reade, Inc.*, 293 F.R.D. 578, 589 (S.D.N.Y. 2013), *aff'd*, 602 Fed. Appx. 3 (2nd Cir. N.Y. 2015) (granting Rule 23(c)(4) class certification for a liability only class); *Charron v. Pinnacle Group N.Y. LLC*, 269 F.R.D. 221, 239 (S.D.N.Y. 2010) (McMahon, J.)(23(c)(4) certification appropriate).

In sum, the GBL §349 consumer fraud and breach of warranty claims seeking certification herein, fit squarely within the framework of 23(c)(4) to materially advance the claims in the context of a liability issues class as an alternative.

## CONCLUSION

For the reasons set forth herein, the motion for Class Certification be granted.

Dated:  April 22, 2019                    Respectfully submitted,

                                          /s/ Gary S. Graifman
                                          Gary S. Graifman, Esq.
                                          **KANTROWITZ, GOLDHAMER**
                                          **& GRAIFMAN, P.C.**
                                          747 Chestnut Ridge Road
                                          Chestnut Ridge, NY 10977
                                          Tel: (845) 356-2570
                                          Fax: (845) 356-4335
                                          ggraifman@kgglaw.com

                                          Elmer Robert Keach, III, Esq.
                                          **LAW OFFICES OF ELMER**
                                          **ROBERT KEACH, III, P.C.**
                                          One Pine West Plaza
                                          Suite 109
                                          Albany, NY 12205
                                          Tel: (518) 434-1718
                                          Fax: (518) 770-1558
                                          bobkeach@keachlawfirm.com

                                          Gary E. Mason, Esq.
                                          **WHITFIELD, BRYSON**
                                          **& MASON LLP**
                                          5101 Wisconsin Avenue, NW
                                          Suite 305
                                          Washington, DC 20016
                                          Tel: (202) 429-2290
                                          gmason@wbmllp.com

                                          Nicholas A. Migliaccio, Esq.
                                          Jason S. Rathod, Esq.
                                          **MIGLIACCIO & RATHOD LLP**
                                          412 H Street N.E.
                                          Ste. 302
                                          Washington, D.C. 20002
                                          Tel: (202) 470-3520

                                          *Attorneys for Plaintiff and the Putative Class*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on April 22, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, to be served on all participants in the case who are registered CM/ECF users.

<u>/s/ Gary S. Graifman</u>
Gary S. Graifman, Esq.

# APPENDIX A

# APPENDIX A

| Class Rep. | Purchase Date | Early Replacement Of Covered Brake Parts | Cost | Did Regular Maintenance |
|---|---|---|---|---|
| Liddle | Nov. 2015 | 15,013 mi.(Hy)<br>31,075 mi. (ISC) | $436<br>$397.87 | Y |
| Miller | Oct. 2007 | 15,332 mi. (Hy)[1]<br>25,915 mi (ISC) | -<br>$330 | Y |
| White | Aug. 2007 | 9,590 mi (Hy)<br>26,739 mi (Hy) | -<br>$309.90 | Y |
| Marshall | Nov. 2005 | 11,297 mi (Hy)<br>42,782 mi[2] (Hy)<br>74,692 mi (ISC) | -<br>$429.45<br>$388.38 | Y |
| McCormick | March 2012 (used) | 60,652 mi (Hy)<br>69,957 mi (ISC)<br>70,113 mi (Hy) | $207.80<br>$240.67<br>$245.77 | Y |

Hy = Hyundai Dealer
ISC = Independent Service Center

-

---

[1]  Rear brakes produced a burning smell but dealer refused to replace under warranty.
[2]  Front brakes